UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

DARE MATTHEWS,

                                      Plaintiff,

            -against-

THE CITY OF NEW YORK, P.O. CARMEN
MARTUCCIO, P.O.s  JOHN DOE #1-3, THE NEW          15 Civ 2311 (ALC)
YORK CITY HEALTH AND HOSPITALS
CORPORATION, DR. KATHERINE MALOY, DR.
ANGELA LEE, DR. ABIGAIL DAHAN, DR. SERENA
YUAN VOLPP, E.M.T. CALIN DAVID, E.M.T.
MICHAEL DISCALA, SL GREEN REALTY CORP.,
SLG 315 WEST LLC, STONEHENGE MANAGEMENT
LLC, GUS BALIDEMIC, and MANNY LOPEZ,

                                 Defendants.

----------------------------------------------------------------------- x

### PLAINTIFF'S CONSOLIDATED
### MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS'
### <u>MOTIONS TO DISMISS</u>

Rose M. Weber
Attorney for Plaintiff
30 Vesey Street, Suite 1801
New York, NY 10007
(212) 748-3355

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

STANDARD FOR MOTIONS TO DISMISS................................................................. 2

ARGUMENT

       POINT I

              THE AMENDED COMPLAINT ADEQUATELY
              STATES A CLAIM FOR FALSE ARREST AND
              IMPRISONMENT. ........................................................................ 3

       POINT II

              THE AMENDED COMPLAINT ADEQUATELY
              STATES A CLAIM FOR VIOLATION OF
              PLAINTIFF'S RIGHT TO SUBSTANTIVE AND
              PROCEDURAL DUE PROCESS. .......................................................... 13

       POINT III

              THE AMENDED COMPLAINT ADEQUATELY
              STATES A CLAIM FOR MALICIOUS ABUSE
              OF PROCESS. ........................................................................... 19

       POINT IV

              THE AMENDED COMPLAINT ADEQUATELY
              STATES A CLAIM FOR FAILURE TO
              INTERVENE.. .......................................................................... 20

       POINT V

              DEFENDANTS' REQUEST FOR QUALIFIED
              IMMUNITY IS PREMATURE AND MUST BE
              DENIED IN ANY EVENT................................................................. 21

       POINT VI

              THE AMENDED COMPLAINT ADEQUATELY
              STATES A CLAIM FOR MUNICIPAL
              LIABILITY............................................................................... 24

POINT VII

THE COURT SHOULD DENY DISMISSAL OF
PLAINTIFF'S STATE LAW CLAIMS. ................................................... 29

CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ali v. Bowery Savings Bank*, 1987 WL 30623 (E.D.N.Y. Dec. 23, 1987).....................................11

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)........................................................................20

*Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011)................................................................11

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003)......................................................4, 23

*Anthony v. City of New York*, 2001 U.S. Dist. LEXIS 8923 (S.D.N.Y. July 2, 2001) ................23

*Appalachian Enterprises. v. ePayment Solutions Ltd.*,
  2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 7, 2004)  ..........................................................3

*Arroyo-Horne v. City of New York*, 2011 U.S. Dist. LEXIS 23904 (E.D.N.Y. Mar. 9, 2011) ....25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)  .....................................................................................2

*Baez v. Jetblue Airways*, 745 F. Supp. 2d 214 (E.D.N.Y. 2010)..................................................10

*Barua v. Barua*, 2015 U.S. Dist. LEXIS 108970 (E.D.N.Y. Aug. 18, 2015)...............................10

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983)......................................................................24

*Benn v. Nassau County*, 2010 WL 2976540 (E.D.N.Y. July 22, 2010)..........................................3

*Bernstein v. City of New York*, 2007 WL 1573910 (S.D.N.Y. May 24, 2007)..............................23

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012) ........................................11

*Best v. Schneider*, 2015 U.S. Dist. LEXIS 125868 (E.D.N.Y. Sept. 18, 2015)............................15

*Biswas v. City of New York*, 973 F. Supp. 2d 504 (S.D.N.Y. 2013)..............................................11

*Blyden v. N.Y.P.D.*, 2005 U.S. Dist. LEXIS 35857 (E.D.N.Y. Dec. 5, 2005).........................9, 16

*Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010) ........................................................................13

*Bostic v. City of Binghamton,* 2006 U.S. Dist. LEXIS 73948 (N.D.N.Y. Oct. 11, 2006) ...........23

*Boyd v. City of Oakland*, 458 F. Supp. 2d 1015 (N.D. Cal. 2006)................................................26

*Bradley v. City of New York*, 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009) .............25

*Brown v. City of New York*, 2013 WL 1338785 (E.D.N.Y. Apr. 1, 2013) ................................... 26

*Brown v. Nassau County*, 760 N.Y.S.2d 655 (App. Div. 2003) ................................... 12

*Bryant v. Steele*, 25 F. Supp. 3d 233 (E.D.N.Y. 2014) ................................... 16

*Camac v. Long Beach City Sch. Dist.*,
    2011 U.S. Dist. LEXIS 79997 (E.D.N.Y. July 22, 2011) ........................................ 11

*Capellupo v. Nassau Health Care Corp.*,
    2009 U.S. Dist. LEXIS 50523 (E.D.N.Y. June 16, 2009) ....................................... 15

*Carrion v. Singh*, 2013 U.S. Dist. LEXIS 34181 (E.D.N.Y. Feb. 21, 2013) .......................... 9, 15

*Castilla v. City of New York*, 2011 U.S. Dist. LEXIS 95619 (S.D.N.Y. Aug. 22, 2011) ............. 28

*Castilla v. City of New York*, 2012 WL 3871517 (S.D.N.Y. Sept. 6, 2012) ............................... 26

*Chamberlain v. City of White Plains*, 2013 WL 6477334 (S.D.N.Y. Dec. 10, 2013) ................. 29

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................ 3

*Charles v. County of Nassau*, 2015 U.S. Dist. LEXIS 98407 (E.D.N.Y. July 28, 2015) ............. 11

*Cruz v. City of New York*, 2015 U.S. Dist. LEXIS 34674 (S.D.N.Y. Mar. 16, 2015) ................. 27

*Cuevas v. City of New York*, 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ............. 25

*Delince v. City of New York*, 2011 U.S. Dist. LEXIS 12582 (S.D.N.Y. Feb. 4, 2011) ............... 10

*Desir v. Board of Co-op. Educ. Svces.*, 2008 WL 4508735 (E.D.N.Y. Sept. 30, 2008).............. 22

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ........................................ 3

*Dillon v. City of New York*, 704 N.Y.S.2d 1 (App. Div. 1999) ........................................ 32

*Donnelly v. Morace*, 556 N.Y.S.2d 605, 607 (App. Div. 1990) ........................................ 12

*Elmaghraby v. Ashcroft*, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005) .................................. 21

*Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) ........................................ 28

*Fisk v. Letterman*, 501 F. Supp. 2d 505 (S.D.N.Y. 2007) ........................................ 15

*Frazier v. City of New York*, 1997 U.S. Dist. LEXIS 5505 (S.D.N.Y. Apr. 23, 1997) ............... 30

*Friedman v. Self Help Community Services*,
    2015 U.S. Dist. LEXIS 32872 (E.D.N.Y. Mar. 17, 2015)........................................ 20

*Goodwin v. Pretorius*, 962 N.Y.S.2d 539 (App. Div. 2013) ........................................................ 29

*Green v. City of New York*, 2004 U.S. Dist. LEXIS 5 (S.D.N.Y. Jan. 5, 2004) ...................... 5, 15

*Green v. Maraio*, 722 F.2d 1013 (2d Cir. 1983) ........................................................................ 21

*Greenaway v. County of Nassau*, 2015 U.S. Dist. LEXIS 43037 (E.D.N.Y. Mar. 31, 2015) ........ 6

*Henry v. County of Nassau*, 2015 U.S. Dist. LEXIS 62652 (E.D.N.Y. May 13, 2015) .............. 22

*Hirsch v. Desmond*, 2010 WL 3937303 (E.D.N.Y. Sept. 30, 2010) ............................................. 22

*Hyde v. Caputo*, 2001 WL 521699 (E.D.N.Y. May 11, 2001) ................................................... 22

*Igartua v. Elmhurst Hosp.*, 2011 U.S. Dist. LEXIS 37980 (E.D.N.Y. Mar. 17, 2011) ............... 32

*In re CRM Holdings, Ltd.*, 2012 U.S. Dist. LEXIS 66034 (S.D.N.Y. May 10, 2012) ................ 26

*Ismail v. Cohen*, 706 F. Supp. 243 (S.D.N.Y. 1989) ................................................................... 30

*Jean-Laurent v. Bowman*, 2014 U.S. Dist. LEXIS 131865 (E.D.N.Y. July 7, 2014) .................. 17

*Johnson v. Myers*, 2011, U.S. Dist. LEXIS 141098 (E.D.N.Y. Dec. 6, 2011) ............................ 15

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001) ................................... 13

*Kavazanjian v. Rice*, 2008 WL 5340988 (E.D.N.Y. Dec. 22, 2008) ........................................... 33

*Kennedy v. City of Albany*, 2015 U.S. Dist. LEXIS 143568 (N.D.N.Y Oct. 22, 2015) ............... 30

*Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001) .......................................................... 6

*King v. Crossland Savings Bank*, 111 F.3d 251 (2d Cir. 1997) ................................................... 10

*Kraft v. City of New York,* 696 F. Supp. 2d 403 (S.D.N.Y. 2010) .............................................. 20

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996) ............................................................... 13

*LaLonde v. Bates*, 166 F. Supp. 2d 713 (N.D.N.Y 2001) ........................................................... 33

*Lawrence v. Town of Brookhaven Dep't of Housing*,
   2007 WL 4591845 (E.D.N.Y. Dec. 26, 2007) ........................................................................ 22

*Levine v. Lawrence*, 2005 WL 1412143 (E.D.N.Y. June 15, 2005) ............................................. 23

*Liffiton v. Keuker*, 850 F.2d 73 (2d Cir. 1988) ......................................................................... 21

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ......................................... 26

*Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) ........................................................................... 22

*Lowmack v. Eckerd Corp.*, 757 N.Y.S.2d 406 (App. Div. 2003) ................................................. 12

*Manners v. New York State Dep't of Envtl. Conservation*,
2015 U.S. Dist. LEXIS 90828 (N.D.N.Y July 14, 2015) ....................................................... 21

*McCants v. City of New York*, 2014 U.S. Dist. LEXIS 153277 (E.D.N.Y. Oct. 29, 2014) .......... 27

*McNamara v. City of New York*, 2009 U.S. Dist. LEXIS 22639 (S.D.N.Y. Mar. 19, 2009)........ 11

*McQuilkin v. Central New York Psychiatric Center*,
2010 U.S. Dist. LEXIS 99081 (N.D.N.Y Aug. 27, 2010) ...................................................... 18

*Moore v. Peters*, 92 F. Supp. 3d 109 (W.D.N.Y. 2015) ............................................................... 21

*Morgan v. City of New York*, 822 N.Y.S.2d 567 (App. Div. 2006)............................................. 18

*Morgan v. Nassau County*, 2009 U.S. Dist. LEXIS 79180 (E.D.N.Y. Sept. 1, 2009) ................ 32

*Natoli v. City of Kingston*, 600 N.Y.S.2d 780 (App. Div. 1993).................................................. 31

*Nogbou v. Mayrose*, 400 Fed. Appx. 617 (2d Cir. 2010) ............................................................. 3

*O'Neill v. Hernandez*, 2010 U.S. Dist. LEXIS 33262 (S.D.N.Y. Mar. 25, 2010) ....................... 31

*Paul v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 15569(E.D.N.Y. Feb. 14, 2011) ................ 11

*People v. De Bour*, 386 N.Y.S.2d 375 (1976) ............................................................................... 5

*People v. Mitchell*, 383 N.Y.S.2d 246 (1976)................................................................................ 4

*People v. Molnar*, 746 N.Y.S.2d 673 (2002) ................................................................................ 4

*Peterec v. City of New York*, 2015 U.S. Dist. LEXIS 28504 (S.D.N.Y. Mar. 4, 2015)............... 27

*Reyes v. City of New York*, 992 F. Supp. 2d 290 (S.D.N.Y. 2014).............................................. 29

*Rivers v. Shanahan*, 2011 N.Y. Misc. LEXIS 2651 (NY Supreme May 31, 2011) .................... 12

*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*,
2009 U.S. Dist. LEXIS 26301 (E.D.N.Y. Mar. 27, 2009)...................................................... 33

*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995) ..................................................... 13

*Roman Catholic Diocese of Rockville Centre v. Incorporated Vill. of Old Westbury*,
2011 WL 666252 (E.D.N.Y. Feb. 14, 2011) ........................................................................ 22

*Rosenbaum v. City of New York*, 8 N.Y.3d 1 (2006) .................................................................. 31

*Rubio v. City of New York*, 2005 U.S. Dist. LEXIS 44256 (E.D.N.Y. Apr. 22, 2005)................. 4

*Schwab v. Smalls*, 2011 WL 3156530 (2d Cir. July 27, 2011) ........................................................ 2

*Simms v. City of New York*, 480 Fed. Appx. 627 (2d Cir. 2012) .................................................... 26

*Spencer v. Bellevue Hospital*, 2012 U.S. Dist. LEXIS 54019 (S.D.N.Y. Apr. 12, 2012) ........ 9, 16

*Swinton v. City of New York*, 785 F. Supp. 2d 3 (E.D.N.Y. 2011) ................................................ 25

*Tchatat v. City of New York*, 2015 U.S. Dist. LEXIS 115093 (S.D.N.Y. Aug. 28, 2015)........... 10

*Torres v. City of New York*, 873 N.Y.S.2d 238 (Sup. Ct. 2008) .................................................... 30

*Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446 (S.D.N.Y. 2012)....................................... 6

*Vazquez v. Marciano*, 169 F. Supp. 2d 248 (S.D.N.Y. 2001)........................................................ 24

*Verley v. Goord*, 2004 WL 526740 (S.D.N.Y. Jan. 23, 2004)........................................................ 22

*Walker v. City of New York*, 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014) .............. 26

*Walker v. Mendoza*, 2000 WL 915070 (E.D.N.Y. June 27, 2000) ................................................ 22

*Weintraub v. Board of Educ. of City of New York*, 423 F. Supp. 2d 38 (E.D.N.Y. 2006)...... 10, 11

*White v. City of New York*, 2015 U.S. Dist. LEXIS 100772 (S.D.N.Y. July 31, 2015)............... 26

*Widget v. Town of Poughkeepsie*, 2013 WL 1104273 (S.D.N.Y. Mar. 18, 2013)........................ 26

*Woods v. Goord*, 2002 WL 731691 (S.D.N.Y. Apr. 23, 2002) .................................................... 22

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ............................................................................ 17

## **Statutes**

Mental Hygiene Law § 9.01 ............................................................................................................ 6

Mental Hygiene Law § 9.39 ................................................................................................... 9, 16, 18

Mental Hygiene Law § 9.40 .......................................................................................................... 16

Mental Hygiene Law § 9.41............................................................................................................ 6, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

DARE MATTHEWS,

                                        Plaintiff,

                   -against-

THE CITY OF NEW YORK, P.O. CARMEN
MARTUCCIO, P.O.s  JOHN DOE #1-3, THE NEW
YORK CITY HEALTH AND HOSPITALS
CORPORATION, DR. KATHERINE MALOY, DR.
ANGELA LEE, DR. ABIGAIL DAHAN, DR. SERENA
YUAN VOLPP, E.M.T. CALIN DAVID, E.M.T.
MICHAEL DISCALA, SL GREEN REALTY CORP.,
SLG 315 WEST LLC, STONEHENGE MANAGEMENT
LLC, GUS BALIDEMIC, and MANNY LOPEZ,

                                      Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW**

15 Civ 2311 (ALC)

**PLAINTIFF'S CONSOLIDATED MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

**PRELIMINARY STATEMENT**

       Defendants the City of New York ("Defendant City"); P.O. Carmen Martuccio

and P.O.s  John Doe #1-3 ("NYPD Defendants"); the New York City Health and Hospitals

Corporation ("Defendant HHC"); Dr. Katherine Maloy, Dr. Angela Lee, Dr. Abigail Dahan, and

Dr. Serena Yuan Volpp ("Doctor Defendants"); E.M.T. Calin David and E.M.T. Michael Discala

("EMT Defendants"); and SL Green Realty Corp., SLG 315 West LLC, Stonehenge

Management LLC, Gus Balidemic, and Manny Lopez ("Private Defendants") have moved to

dismiss the amended complaint.  Plaintiff Dare Matthews respectfully submits this Consolidated

Memorandum of Law in opposition to defendants' motions.

## STATEMENT OF FACTS

Plaintiff relies upon all of the facts stated in the amended complaint, all of which must be accepted as true for purposes of the instant motion.  The essential facts, however, are that on the night in question (when plaintiff was forcibly seized and transported to Bellevue Hospital) and on the days thereafter (when plaintiff was forcibly confined and medicated at Bellevue), she exhibited no symptoms whatsoever of mental illness, much less behaved in a manner to suggest that she presented a danger to herself or others.  Accordingly, there was no justification for any of the actions that any of the defendants took in regard to plaintiff.

## STANDARD FOR MOTIONS TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Nevertheless, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely."  *Schwab v. Smalls*, No. 10–221–cv, 2011 WL 3156530, at *1 (2d Cir. July 27, 2011).  The standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered

in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted). All well-pleaded factual allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "This standard is applied with even greater force where the plaintiff alleges civil rights violations." *Benn v. Nassau County*, No. 10-CV-1963, 2010 WL 2976540, at *4 (E.D.N.Y. July 22, 2010) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). The motion should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nogbou v. Mayrose*, 400 Fed. Appx. 617, 619 (2d Cir. 2010) (citation omitted).

## ARGUMENT

### POINT I

### THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR FALSE ARREST AND IMPRISONMENT.

**A.** **NYPD and EMT Defendants**

NYPD and EMT Defendants first argue that plaintiff has not pled which of them did what. This is simply factually untrue. At paragraph 41 of the Amended Complaint, plaintiff alleges that each and every one of them seized her unlawfully and transported or caused her to be transported to Bellevue Hospital against her will. Plaintiff is not required to be more specific than that, nor could she be at this point, prior to any discovery whatsoever.[1] Plaintiff also

---

[1] It is interesting that defendants rely upon *Appalachian Enterprises. v. ePayment Solutions Ltd.*, No. 01 CV 11502, 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 7, 2004), given that that case states: "Dismissal for failure to comply with the rule [Fed. R. Civ. P. 8] is generally reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* at *20-21.

alleges, in her Fifth Claim for Relief, that to the extent that any Police Defendant was not directly involved in her seizure and transport, he was liable for failure to intervene, making him equally culpable.

Defendants next insist that they were justified in forcibly seizing plaintiff and transporting her to Bellevue Hospital.  This position is frivolous, given the black-letter law on this issue:  "A warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others."  *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003).  In the instant matter, defendants had no reasonable grounds for such a belief.

Defendants' choice of cases on which to rely speaks volumes.  In *Rubio v. City of New York*,[2] No. 03-CV-1349, 2005 U.S. Dist. LEXIS 44256 (E.D.N.Y. Apr. 22, 2005), defendants' principal case, the plaintiff was high on cocaine and alcohol, was "angry, incoherent, and physically and verbally aggressive," and had been shot in the leg.  *Id.* at *12.  Small wonder that "[i]n this context, it is clear that the officers acted reasonably in handcuffing Plaintiff for safety reasons and transporting him to Brookdale Hospital for treatment."  *Id.*  In the instant matter, by contrast, plaintiff was in no physical or mental distress whatsoever and was calm, polite, and coherent.

The other cases cited by NYPD and EMT Defendants are even more wildly afield. *People v. Molnar*, 746 N.Y.S.2d 673 (2002), concerns the right of police to break down someone's door when they smell a decomposing body in the apartment.  In *People v. Mitchell*, 383 N.Y.S.2d 246 (1976), the police were found to be justified in searching hotel rooms for a

---

[2] *Rubio* was also decided on summary judgment, not on a motion to dismiss, and the summary judgment motion was unopposed.

chambermaid who had been kidnapped.  Both of these cases turned on the emergency nature of the searches.  In the instant matter, there was no emergency and there was no search – there was a seizure based upon no good cause whatsoever, much less an emergency.

People v. De Bour, 386 N.Y.S.2d 375 (1976), which is of course one of the seminal cases concerning police interactions with the public,[3] is likewise completely inapposite, simply stating in dictum that police have a right of inquiry (not seizure) when performing a public service function, like trying to find the parents of a lost child.  Id. at 381-82.  Finally, Green v. City of New York, No. 01 Civ. 1996, 2004 U.S. Dist. LEXIS 5 (S.D.N.Y. Jan. 5, 2004), which is at least on-topic, concerns forced transport to a hospital of a man who appeared to be dying – he could not breathe on his own, his ventilators were not working, and he had lost consciousness.  Id. at *35.

NYPD and EMT Defendants are represented by a very able and experienced federal practitioner well-versed in this sort of case.  Defendants' inability to come up with even a single legal precedent justifying their seizure and forced transport of plaintiff says everything that needs to be said about the merits of their legal argument that plaintiff's false arrest claim must be dismissed.

Perhaps recognizing this, NYPD and EMT Defendants ultimately abandon all pretense of legal analysis and instead launch into a potpourri of speculative factual arguments

---

[3] Notably, the Court of Appeals stated in De Bour: "We have defined a seizure of the person for constitutional purposes to be a significant interruption with an individual's liberty of movement. Our recent decisions have emphasized the primacy of the right to be free from aggressive governmental interference." Id. at 380 (internal citation omitted). "Aggressive governmental interference" is, of course, exactly what happened in the case at bar.

that they may possibly be free to make to a jury but that are certainly inappropriate on a motion

to dismiss.  To wit:

- NYPD Defendants were entitled to remove plaintiff to Bellevue pursuant to

Mental Hygiene Law § 9.41.  As the Second Circuit has stated, § 9.41 requires that the person

"appear[] to be mentally ill and [be] conducting himself or herself in a manner which is likely to

result in serious harm to the person or others."  *Kerman v. City of New York*, 261 F.3d 229, 240

n.8 (2d Cir. 2001).  The phrase "likely to result in serious harm" is defined as "a substantial risk

of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily

harm or other conduct demonstrating that the person is dangerous to himself or herself."  MHL

§ 9.01.

> As Magistrate Judge Peck wrote in *Tsesarskaya v. City of New York*, 843 F. Supp.

2d 446 (S.D.N.Y. 2012):

> > Defendants argue that they "had a reasonable basis to believe that
> > plaintiff was an emotionally disturbed person who was dangerous
> > to herself or to others."  Defendants rely on the assertion by the
> > two Italian women that Tsesarskaya was acting crazy,
> > Tsesarskaya's statements to 911 . . ., Tsesarskaya's refusal to open
> > the door, and Tsesarskaya's "erratic and inconsistent behavior."
> > The Mental Health Law, however, requires that likelihood of
> > serious harm be "manifested by threats of or attempts at suicide" or
> > "homicidal or other violent behavior." M.H.L. § 9.01.  Here,
> > whether Tsesarskaya's behavior in refusing to open the door was
> > sufficiently erratic to satisfy M.H.L. § 9.01, or just foolishly
> > stubborn, is a question of fact for the jury.

*Id.* at 456 (internal citations omitted); *see also Greenaway v. County of Nassau*, No. 11-CV-

2024, 2015 U.S. Dist. LEXIS 43037, at *16-17 (E.D.N.Y. Mar. 31, 2015) (summary judgment

denied to defendants because even bizarre and unreasonable behavior and threatening gestures

do not necessarily rise to the level of being "likely to result in serious harm.").

- <u>NYPD Defendants may have been concerned about medication interactions or side-effects</u>.  Aside from the fact that there is nothing in the record about defendants actually having these concerns (because there <u>is</u> no record, no discovery having been had), FDNY records reflect that plaintiff told EMT Defendants that the medications that she takes are Synthroid (thyroid hormone), Adderall (for ADDH), and Ambien (to sleep).  These are all very standard medications and there was no possible reason for any of the defendants to have been concerned about interactions or side-effects, given plaintiff's completely normal presentation.  Parenthetically, according to the Mayo Clinic, more than half of all Americans take two or more prescribed medications.

- <u>NYPD Defendants must have been correct in removing plaintiff to Bellevue because HHC Defendants thereafter decided to continue her confinement</u>.  The fact that other defendants also violated plaintiff's civil rights does not excuse or justify the violation of plaintiff's civil rights by *these* defendants.

- <u>It is irrelevant whether NYPD Defendants considered plaintiff to be an EDP</u>.  The Patrol Guide[4] defines an EDP as:  "A person who appears to be mentally ill or temporarily deranged and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others."  If defendants did not regard plaintiff as an EDP, then by definition they could not have believed that she met the criteria for Mental Hygiene Law § 9.41 or that they had the right to seize her forcibly.

---

[4] Defendants' implication (in underlining the word "Guide") that the Patrol Guide consists merely of suggestions is ludicrous.  As NYPD Defendants are well aware, they are required to follow the procedures laid out in the Patrol Guide unless there is good cause to deviate from them.

- <u>NYPD Defendants were entitled to remove plaintiff to Bellevue based entirely upon the allegations made by Private Defendants</u>.  Interestingly, defendants cite to no case law for this proposition, and it is reasonable to infer from that that none exists.  Furthermore, this argument is entirely inappropriate on a pre-discovery motion to dismiss.  Critical questions are unasked and unanswered, *e.g.*:  Did NYPD Defendants ask Private Defendants how they knew that plaintiff was "hallucinating"?  What kind of hallucinations?  In what way was plaintiff "out of control"?  Did plaintiff say or do anything that seemed dangerous?  Did it seem believable to NYPD Defendants that plaintiff had gone from "hallucinating and out of control" to completely calm and collected in such a short period of time?

- <u>"None of the individual defendants need know more than that there was a possibility that plaintiff might be in distress in order to transport her to a hospital."</u>  (City Mem. at 10.)  This is a bizarre, frightening, and blatantly unconstitutional position for NYPD and EMT Defendants to take.  They cannot honestly believe this, and no response is necessary.

- <u>NYPD Defendants were entitled to defer to the medical judgment of EMT Defendants</u>.  There is nothing in the record – because, again, there *is* no record – to suggest that NYPD Defendants deferred to EMT Defendants.  Discovery will reveal whether that is the case, as a factual matter.  As a legal matter, NYPD Defendants have pointed to no case law suggesting that they did not have an independent duty to determine whether seizing and forcibly transporting plaintiff was justified and constitutional.

## B.   <u>HHC Defendants</u>

The defendant doctors admit that plaintiff's involuntary hospitalization constitutes an unreasonable seizure under the Fourth Amendment unless they had reasonable grounds to believe that plaintiff was subject to seizure under the governing legal standard.  (HHC Mem. at

20.)  Oddly, HHC Defendants then go on to claim that plaintiff has not so much as identified the governing standard.   This is simply factually untrue.   At paragraph 48 of the Amended Complaint, plaintiff states: "An emergency psychiatric admission under Mental Hygiene Law § 9.39 is only permitted where the individual has a mental illness 'which is likely to result in serious harm to himself or others.'"

HHC Defendants go on to cite to three entirely inapposite cases.  In *Carrion v. Singh*, No 12-CV-0360, 2013 U.S. Dist. LEXIS 34181 (E.D.N.Y. Feb. 21, 2013), the virtually unintelligible *pro se* complaint essentially failed to allege any wrongdoing whatsoever on the part of the defendants.  In *Spencer v. Bellevue Hospital*, No. 11 Civ. 7149, 2012 U.S. Dist. LEXIS 54019 (S.D.N.Y. Apr. 12, 2012), another *pro se* case, the complaint was dismissed because the plaintiff "[did] not allege any medical misdiagnosis or other failures by the diagnosing physicians who approved her commitment under the New York statutory scheme." *Id.* at *5.  And in *Blyden v. N.Y.P.D.*, No. 05-cv-4740, 2005 U.S. Dist. LEXIS 35857 (E.D.N.Y. Dec. 5, 2005), yet another *pro se* case with an incoherent complaint that the Court struggled to interpret, the plaintiff never stated at all how his rights had been violated.

By contrast, in the instant matter plaintiff has alleged that the HHC Defendants, in contravention of Mental Hygiene Law § 9.39, confined her and medicated her against her will even though they knew that she did not have a mental illness likely to result in serious harm to herself or others.  This is sufficient to state a claim for violation of the Fourth Amendment, and defendants have offered no case law to the contrary.

## C.   **Private Defendants**

As an initial matter, the Private Defendants seem to be confused as to the nature of plaintiff's false arrest claim against them.  Footnote 1 of their moving brief counters plaintiff's

anticipated reliance on *Weintraub v. Board of Education of City of New York*, 423 F. Supp. 2d 38 (E.D.N.Y. 2006), by citing cases (*Delince v. City of New York*, No. 10 Civ. 4323 2011 U.S. Dist. LEXIS 12582 (S.D.N.Y. Feb. 4, 2011), and *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214 (E.D.N.Y. 2010)) that address whether and when a private citizen may be considered to be a state actor.  There is no such claim in the instant matter.

While the Private Defendants are correct that "merely providing police with information will not support a claim for false arrest or imprisonment, (Private Def. Mem. at 2), they conveniently ignore the fact that they provided the responding police officers and EMTs with <u>false</u> information.  Notably, defendants do not cite to a single case in which a claim for false arrest was dismissed in the face of an allegation that the defendant had deliberately provided false information to authorities.  That is because there appear to be none.

Cutting against Private Defendants' position that their acts needed to be "outrageous," (Private Def. Mem. at 2), is a large body of case law setting out the low threshold for when a private defendant may be held liable for false arrest.  In *King v. Crossland Savings Bank*, 111 F.3d 251 (2d Cir. 1997), the Second Circuit noted that "To be liable for false imprisonment, the plaintiff must prove that the defendant *intended* or *instigated* the confinement of the plaintiff."  *Id.* at 257; *see also, e.g., Tchatat v. City of New York*, No. 14 Civ. 2385, 2015 U.S. Dist. LEXIS 115093, at *38 (S.D.N.Y. Aug. 28, 2015) (noting that a "private party may be held liable for a false arrest effectuated by a police officer if the party in some way induced the officer to act," and such inducement may be accomplished by making false statements); *Barua v. Barua*, No. 14-CV-5107, 2015 U.S. Dist. LEXIS 108970, at *14-15 (E.D.N.Y. Aug. 18, 2015) (allegation of reporting false information to police sufficient to state a claim for false arrest); *Charles v. County of Nassau*, No. 11-CV-2709, 2015 U.S. Dist. LEXIS 98407, at *45 (E.D.N.Y.

July 28, 2015) ("[W]here an individual instigates an arrest and does so based on knowingly false information, that individual may be held liable for false arrest."); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) ("[A] complainant can be held liable for false arrest if the complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report."); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 722 (S.D.N.Y. 2012) ("[D]efendants, by offering false information to state authorities, invoked the power of the state intentionally to cause the plaintiffs' arrest."); *Anilao v. Spota*, 774 F. Supp. 2d 457, 511 (E.D.N.Y. 2011) (same as *Biswas*); *Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309, 2011 U.S. Dist. LEXIS 79997, at *22 (E.D.N.Y. July 22, 2011) (where school official falsely told police that student was suicidal, "the Court finds that plaintiffs have adequately alleged a claim based upon an unconstitutional seizure; plaintiffs have alleged that Goropeuschek intentionally contacted the police and provided false information that would cause the police to confine Charles."); *Paul v. Bank of Am. Corp.*, No. 09-CV-1932, 2011 U.S. Dist. LEXIS 15569, at *19, *22 (E.D.N.Y. Feb. 14, 2011)  ("[A] defendant is liable for false arrest if, with the intent to have the plaintiff arrested, he makes false statements to the police and instigates an arrest.. . . And critically, whether a defendant's conduct rises to the level of instigating is a question of fact."); *McNamara v. City of New York*, No. 06 Civ 5585, 2009 U.S. Dist. LEXIS 22639, at *10-11 (S.D.N.Y. Mar. 19, 2009) (off-duty officer who provided false information to police potentially liable for false arrest); *Weintraub v. Board of Educ. of City of New York*, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006) (false arrest claim may succeed where the defendant has given information to the police despite lacking "reasonable cause for their belief in the plaintiff's culpability."); *Ali v. Bowery Savings Bank*, No. 83 CV 164, 1987 WL 30623, at *1 (E.D.N.Y. Dec. 23, 1987) (private person who affirmatively procures or instigates an arrest is

liable); *Brown v. Nassau County*, 760 N.Y.S.2d 655 (App. Div. 2003) ("The defendant[]'s contention that she cannot be held liable for . . . false arrest as a civilian complainant is without merit as there are triable issues of fact as to whether she intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution."); *Lowmack v. Eckerd Corp.*, 757 N.Y.S.2d 406, 408 (App. Div. 2003) ("One who instigates, causes or directs an arrest without a warrant is liable if it results in false imprisonment."); *Donnelly v. Morace*, 556 N.Y.S.2d 605, 607 (App. Div. 1990) (allegation that private party instigated arrest states cause of action); *Rivers v. Shanahan*,[5] No. 101834/10, 2011 N.Y. Misc. LEXIS 2651, at *10 (NY Supreme May 31, 2011) (denying motion to dismiss because "absent discovery, and as neither Shanahan nor any police officers have been deposed, the extent of Shanahan's involvement with plaintiff's arrest and prosecution has not yet been determined.).

In the instant matter, Private Defendants (who disliked plaintiff) dialed 911 and falsely and maliciously reported that plaintiff was out of control, hallucinating, and possibly on drugs.  In doing so, they knowingly instigated plaintiff's confinement at Bellevue, and the false arrest claim against them may not be dismissed at this juncture.

---

[5] This case is particularly interesting in that Corporation Counsel took the position "that a private individual who instigates or persuades the police to arrest another individual may be liable for false arrest or false imprisonment if he or she provides false information."  *Id.* at *7-8.

## POINT II

## THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR VIOLATION OF PLAINTIFF'S RIGHT TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS.

**Substantive Due Process**

**A.    NYPD and EMT Defendants**

The only argument raised by NYPD and EMT Defendants in regard to plaintiff's claim against them based upon substantive due process is a rephrasing of their argument *supra* – rather than calling their seizure of plaintiff "justified," defendants now argue that it was not "arbitrary and oppressive."  (City Mem. at 11.)  Given that what defendants euphemistically describe as "arranging an emergency room evaluation for a person reported to be disoriented or hallucinating," (*id.* at 12), was actually the forcible seizure, handcuffing, and transport of a sweet, innocent, perfectly sane young woman to the notorious Bellevue psych ward, there is at least a question of fact as to whether consciences might be shocked.  *See, e.g., Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) ("We recognize that the measure of what is conscience-shocking is no calibrated yard stick.").

**B.    HHC Defendants**

HHC Defendants admit that involuntary civil commitment is a massive curtailment of liberty, and that commitment where the individual does not present a danger to self or others violates substantive due process.  (HHC Mem. at 11.)  Defendants then go on, however, to argue as though this was a summary judgment motion[6] and the only evidence that

---

[6] Indeed, all three cases cited by defendant (*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995), *Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996), and *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010), were appeals of summary judgment decisions, and in two of the cases Continued…

plaintiff had presented in support of her claim were the few examples provided in the Amended Complaint.  Defendants conveniently ignore the fact that plaintiff's allegations easily survive a motion to dismiss:  that there was nothing in her behavior to "suggest to any reasonable doctor that she was in need of psychiatric care, was mentally ill, or posed a danger to herself or others," (Am. Compl. ¶ 49), and that therefore "[t]he decision by defendants . . . forcibly to confine and medicate [her] was a substantial departure from accepted judgment, practice, and standards, in that it was substantially below accepted professional judgment, (*id.* ¶ 50).

Furthermore, HHC defendants deliberately mischaracterize the allegations in the Amended Complaint.  First, as is stated explicitly at paragraphs 54 through 59, the examples provided are of deliberate falsification of records, not of "the individual physicians' assessments of [plaintiff's] condition depart[ing] from accepted judgment."  (HHC Mem. at 12.)  Second, and at least as importantly, the cited deliberate falsifications were <u>not</u> a matter of the defendants' "judgment," nor were they "misinterpretations."  They were simply lies, or to be more charitable, extreme instances of confirmation bias so egregious as to be a departure from accepted judgment, practice, and standards

**<u>Procedural Due Process</u>**

**A.     <u>NYPD and EMT Defendants</u>**

Here again NYPD and EMT Defendants merely repurpose their earlier arguments, admitting that "a competent person has a recognized liberty interest in refusing unwanted medical treatment," (City Mem. at 12), while insisting that it was reasonable for them to doubt

---

(*Rodriguez* and *Bolmer*) the Court found issues of fact as to the propriety of the treatment decisions sufficient to send the matters to trial.

that plaintiff was competent to make her own decisions.  As before, defendants' choice to rely upon *Green v. City of New York*, No. 01 Civ. 1996, 2004 U.S. Dist. LEXIS 5 (S.D.N.Y. Jan. 5, 2004), in which police forcibly transported a man who appeared to be dying (he could not breathe on his own, his ventilators were not working, and he had lost consciousness), speaks volumes about defendants' inability to locate even a single case that actually supports their position.

NYPD and EMT Defendants also argue that because plaintiff has brought a claim under the Fourth Amendment, she cannot also bring one under the Fourteenth Amendment.  This is obviously untrue, as courts routinely analyze forced hospitalization cases under both amendments.  *See, e.g., Best v. Schneider*, No. 12-CV-6142, 2015 U.S. Dist. LEXIS 125868 (E.D.N.Y. Sept. 18, 2015); *Carrion v. Singh*, No 12-CV-0360, 2013 U.S. Dist. LEXIS 34181 (E.D.N.Y. Feb. 21, 2013); *Johnson v. Myers*, No. 10-CV-19642011, U.S. Dist. LEXIS 141098 (E.D.N.Y. Dec. 6, 2011); *Capellupo v. Nassau Health Care Corp.*, No 06-CV-4922, 2009 U.S. Dist. LEXIS 50523 (E.D.N.Y. June 16, 2009); *Fisk v. Letterman*, 501 F. Supp. 2d 505 (S.D.N.Y. 2007).

**B.**     **HHC Defendants**

HHC Defendants appear to argue that plaintiff has not stated a claim for violation of her right to due process because she has not identified a) the statutory basis for her confinement, b) what procedures thereunder were violated, and c) who violated them.  Each aspect of this argument is erroneous.

In regard to the statute, defendants are factually incorrect.  At paragraph 90 of the Amended Complaint, plaintiff explicitly alleges that the defendant doctors violated Mental

Hygiene Law § 9.39,[7] and paragraphs 48 and 49 read in tandem make the same allegation.

In regard to specific procedures, HHC Defendants provide no legal support for the proposition that falsification of documents does not provide a sufficient basis for a claim for violation of procedural due process. It should go without saying that those who lie and falsify have not followed the statutory procedures and have not provided "due process" by any reasonable definition of the term.

The cases cited by HHC Defendants provide no support for the idea that individuals can lie and falsify and yet still somehow have complied with due process. In *Spencer v. Bellevue Hospital*, No. 11 Civ. 7149, 2012 U.S. Dist. LEXIS 54019 (S.D.N.Y. Apr. 12, 2012), a *pro se* case, the complaint was dismissed because the plaintiff "[did] not allege any medical misdiagnosis or other failures by the diagnosing physicians who approved her commitment under the New York statutory scheme." *Id.* at *5. In *Blyden v. N.Y.P.D.*, No. 05-cv-4740, 2005 U.S. Dist. LEXIS 35857 (E.D.N.Y. Dec. 5, 2005), yet another *pro se* case with an incoherent complaint that the Court struggled to interpret, the plaintiff never stated at all how his rights had been violated.

The third case cited by HHC Defendants (*Bryant v. Steele*, 25 F. Supp. 3d 233 (E.D.N.Y. 2014)) is instructive. In that matter, Judge Spatt recognized that a cognizable

---

[7] Although not raised by defendants, in writing these papers plaintiff's counsel has realized that she inadvertently failed to mention in the Amended Complaint another alleged statutory basis for plaintiff's confinement (Mental Hygiene Law § 9.40, concerning emergency admission to a "comprehensive psychiatric emergency program"). As, upon information and belief, plaintiff did spend at least some time in Bellevue's CPEP, plaintiff will seek leave to amend to clarify this matter. The standard under the two section of the MHL is identical – the individual must be "alleged to have a mental illness for which immediate observation, care, and treatment in a hospital [versus "such program"] is appropriate and which is likely to result in serious harm to himself or others."

Fourteenth Amendment [due process] claim under Section 1983 can exist in certain involuntary commitment cases," but found that that particular plaintiff's claim failed because "the Plaintiff fails to identify any specific procedure contained in the Mental Hygiene Law that an evaluating physician must use — and here, failed to use — in determining whether a person satisfies the substantive statutory requirements for involuntarily commitment." *Id.* at 247.  In the instant matter, in contrast, plaintiff has alleged that the defendant doctors failed to use the most critical implicit procedure of the MHL – that those operating under its strictures do so honestly and without falsification.

The situation at bar – technical compliance with procedures required by due process but malfeasance and dishonesty in implementing those procedures – is directly analogous to situations where police officers dealing with a crime technically comply with the required procedures – make an arrest, fill out paperwork, provide information to the prosecutor, and so forth – but are dishonest in doing so.  In that situation, and by extension here, the Second Circuit has stated:  "[The plaintiff] alleges an example of a classic constitutional violation: the deprivation of his liberty without due process of law.  The liberty deprivation is the eight months he was confined . . . *and the due process violation is the manufacture of false evidence*." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (emphasis supplied); *see also Jean-Laurent v. Bowman*, No. 12 CV 2954, 2014 U.S. Dist. LEXIS 131865, at *38 (E.D.N.Y. July 7, 2014) ("As . . . plaintiff has alleged that Harvey falsified statements, plaintiff's procedural due process claim should survive summary judgment.").

A rule that a defendant could escape liability for violating due process simply by implementing the proper procedures, albeit in a dishonest and corrupt manner, would lead to terrible results.  Fortunately that is not the law:

> [S]ince an involuntary confinement to a mental health care facility constitutes a massive curtailment of liberty, considerations of due process require that HHC comport its conduct with the procedures outlined in the Mental Hygiene Law, *and take steps properly to apply the criteria articulated therein*. The plaintiff alleged that HHC violated these strictures, and failed to take the necessary steps to properly apply the statutory criteria. The Supreme Court erred, therefore, in dismissing the plaintiff's cause of action pursuant to 42 USC § 1983 alleging that HHC deprived his decedent of liberty in the absence of procedural due process, in violation of the Fourteenth Amendment.").

*Morgan v. City of New York*, 822 N.Y.S.2d 567, 569 (App. Div. 2006) (internal citation omitted) (emphasis supplied).

Finally, HHC Defendants maintain that plaintiff has not properly alleged their personal involved in violating plaintiff's due process rights.  This is factually incorrect.  The Amended Complaint, at paragraphs 46 through 50, alleges that each and every one of the doctor defendants, in forcibly confining and medicating plaintiff, failed to comply with Mental Hygiene Law § 9.39; and at paragraph 54 that each and every one of the doctor defendants falsified documents and/or gave false testimony.  At paragraph 66, the Amended Complaint goes on to allege that "[t]he false notations, documentation, and certifications made in plaintiff's medical records by defendant [doctors] were the direct cause of plaintiff's continued confinement at Bellevue Hospital."  At this stage of the proceedings, prior to any discovery having been had, plaintiff cannot be expected to make more specific allegations concerning the exact role of each doctor in the violation of her due process rights.

Indeed, the lack of merit in HHC Defendants' argument can be inferred from their citation to a single case (brought by a *pro se* plaintiff) that is entirely inapposite.  In *McQuilkin v. Central New York Psychiatric Center*, No. 08 CV 0975, 2010 U.S. Dist. LEXIS 99081 (N.D.N.Y. Aug. 27, 2010), the court dismissed the claims against a doctor where the only allegation was that the defendant had provided a certificate in support of an application for

involuntary commitment.[8]  *Id.* at *66.  In the instant matter, the allegations are far more detailed and troubling, including falsification of medical documentation.


## POINT III

### THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR MALICIOUS ABUSE OF PROCESS.

HHC Defendants first appear to argue that because state law provides the elements of this claim, even a federal claim cannot be brought absent a Notice of Claim.  (HHC Mem. at 17.)  This is so blatantly wrong that no response is required.  In regard to the sufficiency of plaintiff's Notice of Claim, plaintiff respectfully refers the Court to Point VII, *infra*.

Substantively, HHC Defendants argue that plaintiff cannot satisfy two prongs of the tort of malicious abuse of process.  They first maintain that plaintiff has offered only a "formulaic recitation" of the second prong (that defendants intended to harm her without excuse or justification).  (HHC Mem. at 18.)  This is factually untrue.  At paragraphs 49 and 50 of the Amended Complaint, plaintiff alleges that HHC Defendants forcibly confined and medicated her (*i.e.*, intentionally harmed her) even though she was objectively not in need of psychiatric care (*i.e.*, without excuse or justification).

HHC Defendants also maintain that the collateral objective posited by plaintiff (keeping up the census at Bellevue) is implausible, quasi-frivolous, and "patently absurd." (HHC Mem. at 19.)  At paragraphs 52 and 53 of the Amended Complaint, plaintiff has pled facts

---

[8] As a side-note, plaintiff would argue that dismissal was improvidently granted in *McQuilkin*, and likely resulted from the judge's understandable frustration with the entire case and with the plaintiff, a schizophrenic who, *inter alia*, refused medication because "these are heterogeneous medications, work as isotopes, you know, like small nuclear bombs."  *Id.* at *4.

concerning HHC finances that support her allegation as to collateral objective.  There is nothing absurd about the idea that a healthcare system that is deeply in the red might pressure its employees to generate additional income by filling beds with patients, especially those with private insurance, like plaintiff.

  The only two cases cited by HHC Defendants do not in any way support their position.   In *Friedman v. Self Help Community Services*, No. 11-CV-3210, 2015 U.S. Dist. LEXIS 32872 (E.D.N.Y. Mar. 17, 2015), the *pro se* plaintiff alleged that his relatives, several government and private agencies, HHC, the Comptroller's Office, and NYPD all conspired together to deprive him of his inheritance.  Not surprisingly, the court found the plaintiff to be "delusional."  *Id.* at *18.  And *Kraft v. City of New York,* 696 F. Supp. 2d 403 (S.D.N.Y. 2010), was decided on a motion for summary judgment (not a motion to dismiss), and the malicious abuse of process claim was dismissed specifically because of a failure to put forth evidence.  *Id.* at 416.  On this motion to dismiss, plaintiff need not put forth evidence, but rather make plausible allegations, which she has done in the Amended Complaint.

## POINT IV

### THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR FAILURE TO INTERVENE.

In *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) the Second Circuit wrote:

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used, that a citizen has been unjustifiably arrested, or that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must

> have been a realistic opportunity to intervene to prevent the harm from occurring.   Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Id.* at 557 (internal citations omitted).

At this point in the litigation, no discovery having taken place, it is impossible to tell what role each of the police officer defendants played in the various violations of plaintiff's constitutional rights.  The surveillance video reveals that four police officers were present in the lobby and that all four interacted with plaintiff and/or were able to see and hear the interactions between plaintiff and the other officers.  There is no sound on the video and without discovery, it is impossible to know which officers were directly involved in the violation of plaintiff's civil rights and which officers failed to intervene.  There is no question that each of the four officers is plausibly liable under one theory or the other, and dismissal at this point would be imprudent.

## POINT V

### DEFENDANTS' REQUEST FOR QUALIFIED IMMUNITY IS PREMATURE AND MUST BE DENIED IN ANY EVENT.

It is beyond question that addressing the defense of qualified immunity on a motion to dismiss is generally disfavored.  *See, e.g., Liffiton v. Keuker*, 850 F.2d 73, 76 (2d Cir. 1988); *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *Manners v. New York State Dep't of Envtl. Conservation*, No. 6:14-CV-810, 2015 U.S. Dist. LEXIS 90828, at *38 (N.D.N.Y July 14, 2015) ("The Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage."); *Moore v. Peters*, 92 F. Supp. 3d 109, 127 (W.D.N.Y. 2015); *Elmaghraby v. Ashcroft*, No. 04 CV 1409, 2005 WL 2375202, at *11 (E.D.N.Y. Sept. 27, 2005);

*Verley v. Goord*, No. 02 Civ. 1182, 2004 WL 526740, at *17 (S.D.N.Y. Jan. 23, 2004); *Woods v.*

*Goord*, No. 01 CIV. 3255, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002); *Hyde v. Caputo*,

No. 98 CV 6722, 2001 WL 521699, at *2 (E.D.N.Y. May 11, 2001); *Walker v. Mendoza*, No.

00-CV-93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000).

   Merits aside, courts in this Circuit routinely deny pre-discovery motions to

dismiss brought on the basis of qualified immunity "[b]ecause this defense necessarily involves a

fact-specific inquiry" and "it is generally premature to address the defense of qualified immunity

in a motion to dismiss." *Roman Catholic Diocese of Rockville Centre v. Incorporated Vill. of Old*

*Westbury*, No. 09-CV-5195, 2011 WL 666252, at *20 (E.D.N.Y. Feb. 14, 2011) (quoting *Toth ex*

*rel. Toth v. Board of Educ.*, No. 07-CV-3239, 2008 WL 4527833, at *7 (E.D.N.Y. Sept. 30,

2008)); *see also Locurto v. Safir*, 264 F.3d 154, 164 (2d Cir. 2001) (citing *X-Men Sec., Inc. v.*

*Pataki,* 983 F. Supp. 101, 117 (E.D.N.Y.1997)) ("holding that in light of the lack of discovery

the motion was premature and could be better decided on a motion for summary judgment");

*Henry v. County of Nassau*, No. 13-cv-7427, 2015 U.S. Dist. LEXIS 62652, at *30 (E.D.N.Y.

May 13, 2015) ("[A] ruling on the availability of a qualified immunity defense would be

premature on a motion to dismiss if, for example, the objective reasonableness of the defendants'

acts depends in part on what information they had at the time."); *Hirsch v. Desmond*, No. 08-CV-

2660, 2010 WL 3937303, at *5 (E.D.N.Y. Sept. 30, 2010) (denying qualified immunity as

premature in a motion to dismiss); *Desir v. Board of Co-op. Educ. Svces.*, No. 07-CV-1994, 2008

WL 4508735, at *5 (E.D.N.Y. Sept. 30, 2008) (same); *Lawrence v. Town of Brookhaven Dep't*

*of Housing*, No. 07-CV-2243, 2007 WL 4591845, at *19-*20 (E.D.N.Y. Dec. 26, 2007) (same);

*Walker v. Mendoza*, No. 00-CV-0093, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) (same);

*Bernstein v. City of New York*, No. 06-CV-895, 2007 WL 1573910, at *9 (S.D.N.Y. May 24,

2007) (same); *Bostic v. City of Binghamton,* No. 06–CV–540, 2006 U.S. Dist. LEXIS 73948, at

*13 (N.D.N.Y. Oct. 11, 2006) ("While the facts that may be established through discovery might

lead to the conclusion that the individual defendants possessed actual or arguable probable cause

to arrest [p]laintiff and commence his prosecution… that determination will have to await a

summary judgment motion or trial"); *Levine v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143,

at *11 (E.D.N.Y. June 15, 2005) ("A qualified immunity defense may be presented, but faces a

formidable hurdle in a Rule 12(b)(6) motion, and is usually not successful." (citing *McKenna v.*

*Wright,* 386 F.3d 432, 434 (2d Cir. 2004)).

Turning to the instant matter, NYPD and EMT Defendants simply rehash their

erroneous argument that it was reasonable to seize plaintiff for her own good.  (City Mem. at 14-

15.)  Here again, the cases cited by defendants show that they are merely grasping at straws.  In

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003), the defendant officers[9] were granted

qualified immunity largely because they were ordered by a superior officer to seize the plaintiff,

and also because the plaintiff (an adult with Down Syndrome) had called 911 and had rambled

incoherently, stating *inter alia* that she was five years old and that her (non-existent) husband

was attacking her with a knife and a gun.  *Id.* at 133, 138.

---

[9] Defendant officers in the instant matter purport to be concerned that they would have been accused of "callous indifference" had they failed to "assist" plaintiff.  (City Mem. at 14.)  The full quote from the district court opinion in *Anthony* is instructive:  "If the officers had decided to leave the apartment once they found Anthony calmly seated in a chair and after they had been unable to locate a responsible person to stay with her, the officers could have stood fairly accused of callous indifference to the special needs of a person who had recently experienced extreme mental suffering *and who was, from any objective standard, unable to manage her life's affairs and activities without supervision and assistance*."  *Anthony v. City of New York*, No. 00 CIV. 4688, 2001 U.S. Dist. LEXIS 8923, at *20-21 (S.D.N.Y. July 2, 2001) (emphasis supplied).

In *Koch v. Town of Brattleboro*, 287 F.3d 162 (2d Cir. 2002), a case regarding a warrantless entry rather than a seizure, the police were granted qualified immunity because the officers had known the plaintiff for fifteen years and were aware that he was mentally ill and court-mandated to take lithium.  They knew that he often behaved inappropriately and that his behavior often required police intervention.  Even before this particular incident, they considered the plaintiff to pose a danger under certain circumstances.  *Id.* at 164, 169.

It is almost literally impossible to believe that NYPD and EMT Defendants have cited to *Vazquez v. Marciano*, 169 F. Supp. 2d 248 (S.D.N.Y. 2001), in support of their claim for qualified immunity.  In *Vazquez*, the *pro se* plaintiff had "smoked two bowls of marijuana, sniffed two or three lines of cocaine and drank perhaps 15 or 16 beers" before crashing his car into a tree while driving fifty miles per hour in an effort to elude police.  *Id.* at 250.  The fact that the defendant officers in that matter were granted qualified immunity for taking the plaintiff to the hospital has absolutely no relevance to the instant matter, and defendants' citation to this case underlines their complete inability to find precedent that actually supports their position.


## POINT VI

### THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR MUNICIPAL LIABILITY.

The amended complaint alleges, at paragraphs 98 through 108, the three elements of a *prima facie* case for municipal liability required by, e.g., *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983):  that plaintiff plead (1) an official policy or custom that (2) caused plaintiff to be subjected to (3) a denial of a constitutional right.  Therefore, in order for the Court to dismiss the municipal liability claim at this juncture, before any discovery whatsoever has taken place, the Court must decide that plaintiff's allegations are completely implausible.  *See supra*.

Plaintiff has alleged that defendants City and HHC have a custom and practice of "wrongfully arresting and hospitalizing individuals who do not require in-patient mental health treatment, and falsifying documents to justify forced psychiatric hospitalizations." (Am. Compl. ¶ 101.) In the face of this very specific allegation, supported by factual allegations, defendant City nonetheless accuses plaintiff of relying upon "boilerplate" language. (City Mem. at 17.) Here again, though, the only cases cited by defendant reveal the absence of support for its position – in *Cuevas v. City of New York*, No. 07 Civ. 4169, 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009), and *Bradley v. City of New York*, No. 08-CV-1106, 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009), the plaintiffs literally used boilerplate language (*i.e.*, they did not allege any specific policy or practice whatsoever); and in *Swinton v. City of New York*, 785 F. Supp. 2d 3 (E.D.N.Y. 2011) and *Arroyo-Horne v. City of New York*, No. 07 CV 5213, 2011 U.S. Dist. LEXIS 23904 (E.D.N.Y. Mar. 9, 2011), it appears that the plaintiffs presented no facts whatsoever in support of their *Monell* allegations.

Defendant City also argues, as does defendant HHC, that plaintiff's citation to numerous other instances of similar misconduct is not adequate to state a *Monell* claim. It is important to note that plaintiff will not rely upon the <u>existence</u> of those cases to support her claim, but rather upon the <u>facts</u> of the cases (as stated at Paragraph 102 of the Amended Complaint). However, if plaintiff <u>did</u> wish to rely simply on the existence of the other cases, she would be well within her rights. As Judge Failla wrote only a few months ago:

> Courts have taken into account the existence of similar lawsuits when deciding whether a plaintiff has adequately alleged a *Monell* claim. For example, the district court in *Shepherd* noted that 'the steady stream of suits against the County alleging excessive use of force in the [Westchester County Jail]' added further credibility to the claims alleged in the complaint. *Shepherd*, 2012 U.S. Dist. LEXIS 141179, 2012 WL 4477241, at *10; see also *McCants v. City of Newburgh*, No. 14 Civ. 556 (VB), 2014 U.S. Dist. LEXIS

> 165821, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014),
> clarified on denial of reconsideration, 2014 U.S. Dist. LEXIS
> 184517, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014) (finding that
> the plaintiff's reference to other lawsuits demonstrated that the
> municipality 'was on notice to the possible use of excessive force
> by its police officers on seventeen different occasions').

*White v. City of New York*, No. 13 Civ. 7421, 2015 U.S. Dist. LEXIS 100772, at *23 (S.D.N.Y. July 31, 2015); *see also Brown v. City of New York*, No. 08–CV–5095, 2013 WL 1338785, at *7 (E.D.N.Y. Apr. 1, 2013) (finding plaintiff's citation to "seven settled cases and a statement by a police spokesperson" sufficient to survive a motion to dismiss); *Castilla v. City of New York*, No. 09 Civ. 5446, 2012 WL 3871517, at *5 (S.D.N.Y. Sept. 6, 2012) (denying dismissal of *Monell* claim because plaintiff "alleges various other instances of male police officers taking sexual advantage of females under their custody or control"); *cf. Widget v. Town of Poughkeepsie*, No. 12 Civ. 3459, 2013 WL 1104273, at *11 (S.D.N.Y. Mar. 18, 2013) (dismissing *Monell* claim because "Plaintiff does not allege similar incidents.").

　　　　With the exception of *Walker v. City of New York*, No. 12 Civ. 5902, 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014), which plaintiff would respectfully argue was wrongly decided, defendants have not presented a single on-point case in support of their position.  In *Simms v. City of New York*, 480 Fed. Appx. 627 (2d Cir. 2012), the plaintiff cited to only one other case.  Bizarrely, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976), concerns the admissibility of a consent judgment in a shareholder action.  Even more bizarrely, *In re CRM Holdings, Ltd.*, No. 10 Civ. 975, 2012 U.S. Dist. LEXIS 66034 (S.D.N.Y. May 10, 2012), specifically addresses what factual allegations a plaintiff needs to make in order to meet the scienter requirement in a shareholder action.

　　　　*Boyd v. City of Oakland*, 458 F. Supp. 2d 1015 (N.D. Cal. 2006), in addition to being from a different jurisdiction, was not decided on a motion to dismiss, but rather on a

summary judgment motion in which the court was asked to take judicial notice of certain facts. *Cruz v. City of New York*, No. 12 Civ. 168, 2015 U.S. Dist. LEXIS 34674 (S.D.N.Y. Mar. 16, 2015), and *McCants v. City of New York*, No. 11 CV 3511, 2014 U.S. Dist. LEXIS 153277 (E.D.N.Y. Oct. 29, 2014), both were decided on summary judgment and involved a failure of proof, not a paucity of allegations.  Lastly, *Peterec v. City of New York*, No. 14 Civ. 309, 2015 U.S. Dist. LEXIS 28504 (S.D.N.Y. Mar. 4, 2015), is completely inapposite, in that it was a *pro se* case in which the plaintiff apparently alleged only that "the custom and policy of the New York City Police Department is one of depriving citizens of their constitutional rights."  *Id.* at *18.

Defendants City and HHC also argue that the particular cases cited by plaintiff do not provide plausible evidence of a custom or practice.  This is factually incorrect.  The Jones,[10] Eng, and Morgan matters all settled.  The Wrobleski matter was dismissed because the *pro se* plaintiff did not name any individual defendants, the Warheit matter was dismissed because the plaintiff did not name the individual Bellevue doctors, and the Brown matter was dismissed for failure to prosecute; there was no adjudication as to the truth or falsity of the facts presented in each matter.   In the Bender matter, the claims against the doctors were indeed dismissed (because the *pro se* plaintiff offered nothing more than her opinion that they the doctors were wrong about her), but the claims against the police officers remained in the case.[11]  The Marion matter led to a plaintiff's verdict and the Brock matter is currently pending.  Thus plaintiff can point to the facts asserted in these nine cases in support of her *Monell* allegations.

---

[10] Defendant City wrongly states that this matter was dismissed under Fed. R. Civ. P. 41.

[11] While defendant City claims otherwise in its papers, it offers no support for the allegation that the entire matter was dismissed on summary judgment.

While nine cases spread over a period of years may not seem compelling, it is certainly sufficient to survive a motion to dismiss.  *See, e.g., Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) ("Plaintiff augments this allegation by identifying, without the benefit of discovery, two other instances in which Suffolk County's supposedly neutral hearing officers failed to properly apply Krimstock.  Three instances (including Plaintiff's own claim) might not suffice to overcome summary judgment. But, at this stage, they do permit a plausible inference of a widespread practice or informal custom within Suffolk County.").

As *Ferrari* acknowledges, at this stage of the proceedings (*i.e.*, before any discovery has taken place), information is highly asymmetrical, and it is simply not reasonable to expect plaintiff to plead her *Monell* claim with greater particularity.  Defendants, and defendants alone, possess the information that plaintiff would need in order to do so, and they cannot now demand dismissal of plaintiff's *Monell* claim on that basis.

As Judge Stein wrote in *Castilla v. City of New York*, No. 09 Civ. 5446, 2011 U.S. Dist. LEXIS 95619 (S.D.N.Y. Aug. 22, 2011):

> [T]he Court finds that Castilla has sufficiently pled claims for *Monell* liability against the City of New York.  This finding is based, in part, on the Second Circuit's recognition that "[it] is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). The Second Circuit has not yet addressed whether *Iqbal* has heightened the pleading requirements for such a municipal liability claim, but district courts in this Circuit have continued, post-*Iqbal*, to apply the pleading standard articulated in *Amnesty* to a *Monell* claim based on a failure to train.  Thus, in assessing the sufficiency of plaintiff's *Monell* claims—particularly the failure to train claim— the Court keeps in mind that plaintiff has not yet had the full benefit of discovery.

*Id.* at *10-11 (some internal citations omitted).  While the instant matter does not specifically involve a failure-to-train claim, the language of *Castilla* is applicable to all varieties of *Monell* claims.  *See also Ferrari*, 790 F. Supp. 2d at 45 ("[A]lthough Ferrari does not plead much factual detail concerning Suffolk County's training programs, it is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage. Thus, a plaintiff need only plead that the city's failure to train caused the constitutional violation, in order to plead municipal liability.").

### POINT VII

### THE COURT SHOULD DENY DISMISSAL OF PLAINTIFF'S STATE LAW CLAIMS.

As a threshold matter, NYPD and EMT Defendants argue that all state law claims against them must be dismissed because they are not named in the Notice of Claim filed by plaintiff.  Unfortunately, every bit of the case law cited by defendants in support of that proposition is out of date.

In 2013, the Fourth Department revisited this issue and determined that its earlier jurisprudence (holding that individuals must be named in the Notice of Claim) was incorrect. *Goodwin v. Pretorius*, 962 N.Y.S.2d 539 (App. Div. 2013).  Soon thereafter, Judge Torres of this Court followed that guidance, predicting that the Court of Appeals would adopt the Fourth Department's view.  *Reyes v. City of New York*, 992 F. Supp. 2d 290, 300-02 (S.D.N.Y. 2014); *see also Chamberlain v. City of White Plains*, No. 12–CV–5142, 2013 WL 6477334, at *22 (S.D.N.Y. Dec. 10, 2013) (adopting the *Goodwin* court's "well-reasoned conclusion").  And just last month Judge D'Agostino in the Northern District wrote extensively on this issue, also concluding that "this Court estimates that the New York Court of Appeals would find that

individually named officers are not required in the notice of claim." *Kennedy v. City of Albany*,

No. 1:15-cv-00491, 2015 U.S. Dist. LEXIS 143568, at *6-11 (N.D.N.Y Oct. 22, 2015).

As a second threshold matter, HHC Defendants argue that the state law claims

against them for malicious abuse of process, intentional infliction of emotional distress, negligent

infliction of emotional distress, and negligent hiring, retention, training, and supervision must be

dismissed because they allegedly[12] were not included in plaintiff's Notice of Claim.  The Notice

of Claim statute, however, is far more lenient than defendants would have the Court believe:

> Our courts have consistently held that the notice of claim statute,
> General Municipal Law § 50-e, is to be applied flexibly, and that
> flexibility is the key to balance two countervailing interests: on the
> one hand, protecting municipal defendants from stale or frivolous
> claims, and on the other hand, ensuring that a meritorious case is
> not dismissed for a ministerial error. Moreover, our courts have
> also recognized that the notice requirement set forth in General
> Municipal Law was not meant to be used as a sword to cut down
> honest claims but merely as a shield to protect municipalities
> against spurious ones.. . . This Court is not suggesting that a
> claimant may unconditionally add a new cause of action or theory
> of liability which was not referred to or implied in the notice of
> claim; however, a theory of liability related to or implied by what
> is clearly stated in the notice of claim should be permitted to
> proceed.

*Torres v. City of New York*, 873 N.Y.S.2d 238 (Sup. Ct. 2008); *see also Frazier v. City of New*

*York*, No. 96 Civ. 3345, 1997 U.S. Dist. LEXIS 5505, at *9 (S.D.N.Y. Apr. 23, 1997) (plaintiff

required only to specify time, place and manner in which claims arose); *Ismail v. Cohen*, 706 F.

Supp. 243, 250 (S.D.N.Y. 1989) ("General Municipal Law § 50-e does not require that a

claimant specify a precise cause of action; it requires only that he specify the time, place and

---

[12] While the emotional distress claims were not denominated as such, they were very obviously
presented in the Notice of Claim, which states that plaintiff experienced "psychiatric and
psychological sequelae including mental anguish, fear, insomnia, post traumatic stress disorder,
paranoia, anxiety, and panic attacks."

manner in which his claims arose."); *Rosenbaum v. City of New York*, 8 N.Y.3d 1, 10 (2006) ("The test of the sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the city to investigate.  Thus, in determining compliance with the requirements of General Municipal Law § 50-e, courts should focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the claim.").

Moving on to plaintiff's substantive state law claims:

False Arrest and False Imprisonment

Plaintiff respectfully refers the Court to Point I, *supra*.

Malicious Abuse of Process

Plaintiff respectfully refers the Court to Point III, *supra*.

Intentional and Negligent Infliction of Emotional Distress

The arguments raised by all three sets of defendants consist of little more than boilerplate – they correctly point out that these torts require outrageous behavior and that the threshold for a plaintiff prevailing is very high.  Plaintiff does not dispute any of that.  However, as is all that is required on these motions to dismiss, plaintiff has plausibly pled that defendants did act outrageously in forcibly seizing, transporting, confining, and medicating her with absolutely no justification.  Accordingly, these tort claims cannot properly be dismissed at this point.

NYPD and EMT Defendants tacitly acknowledge this in citing exclusively to summary judgment decisions (*Natoli v. City of Kingston*, 600 N.Y.S.2d 780 (App. Div. 1993), and *O'Neill v. Hernandez,* No. 08 Civ. 1689, 2010 U.S. Dist. LEXIS 33262 (S.D.N.Y. Mar. 25, 2010).  Mysteriously (or perhaps because the case was decided by Your Honor), HHC

Defendants cite to *Igartua v. Elmhurst Hosp.*, No. 09-CV-3287, 2011 U.S. Dist. LEXIS 37980 (E.D.N.Y. Mar. 17, 2011), in which the *pro se* plaintiff sought one billion dollars because the defendants had "intentionally created a negative atmosphere when she was scheduled to give birth." *Id.* at *2, *3.

Amidst the avalanche of boilerplate, defendants do raise certain more specific arguments, but to no avail. NYPD and EMT Defendants claim that "as a matter of public policy, a municipality and its employees engaged in official conduct cannot be sued on a theory of IIED." (City Mem. at 22.) The only case upon which defendants rely (*Dillon v. City of New York*, 704 N.Y.S.2d 1 (App. Div. 1999)), and indeed all of the cases on which *Dillon* relies, concern only a government entity, not its employees.

NYPD and EMT Defendants also maintain that these claims fail because the allegations in the complaint are covered by more traditional torts. Defendants rely for this proposition on *Morgan v. Nassau County*, No. 03-CV-5109, 2009 U.S. Dist. LEXIS 79180 (E.D.N.Y. Sept. 1, 2009). In that opinion, however, Judge Townes relied upon a state court opinion from 1978 and a federal court opinion from 1998. The law, however, had evolved over the intervening years, as noted by Judge Block:

> Courts applying New York law have increasingly "permitted IIED claims [against police officers] to go forward where there were allegations of extreme and outrageous conduct that exceeded the elements of other torts" such as battery. *Strassner v. O'Flynn,* No. 04-CV-6021CJS, 2006 WL 839411, at *10 (W.D.N.Y. Mar. 27, 2006); *see, e.g., Wahhab v. City of New York,* 386 F.Supp.2d 277, 293 (S.D.N.Y.2005) (denying police officer's motion to dismiss IIED claim where officer's alleged conduct, including multiple punches and kicks requiring hospitalization, was "extreme and outrageous and well exceed [ed] the ambit of traditional assault and battery"). Here, Kavazanjian alleges that he was attacked savagely and at length while he lay handcuffed and defenseless-conduct which may well transcend garden-variety assault and battery and qualify as "extreme and outrageous."

*Kavazanjian v. Rice*, No. 03-CV-1923, 2008 WL 5340988, at *8 (E.D.N.Y. Dec. 22, 2008).   In the instant matter, plaintiff would argue that the conduct of all of the defendants – knowingly confining a perfectly sane young woman to a notorious mental hospital – goes beyond the type of conduct contemplated by the torts of false arrest and false imprisonment, and that her infliction of emotional distress claims may therefore proceed as a matter of law.

Lastly, NYPD and EMT Defendants claim that because plaintiff is alleging intentional behavior, she cannot also allege negligence.  This is incorrect as a matter of law, and defendants offer no legal support for the proposition.  In the single case that they cite (*LaLonde v. Bates*, 166 F. Supp. 2d 713 (N.D.N.Y 2001), the plaintiff alleged excessive force and assault, both of which have intent elements – they cannot be performed negligently.

The Private Defendants argue that providing false information to authorities is not extreme and outrageous.   Although defendants present this argument as though it was a statement of the law, the case upon which they rely (*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, No. CV-07-5441, 2009 U.S. Dist. LEXIS 26301 (E.D.N.Y. Mar. 27, 2009), did not make such a sweeping claim, and the ruling must be limited to the facts of that particular case, which were that the employer had done nothing more than file a police report accusing the employee of theft.  In the instant matter, on the other hand, defendants purposefully gave false information because of their dislike for plaintiff, knowing that plaintiff would likely be involuntarily hospitalized.  A reasonable jury could certainly decide that providing false information under this particular factual scenario was extreme and outrageous.

Assault and Battery

NYPD and EMT Defendants and HHC Defendants allege that plaintiff has not offered facts to support these claims.  That is simply incorrect.  At paragraph 41 of the Amended

Complaint plaintiff alleges that NYPD and EMT Defendants forcibly seized and transported her; at paragraphs 46 and 47 that HHC Defendants forcibly confined and medicated her, and at paragraph 67 that an employee of defendant HHC punched her in the face.  Private Defendants correctly note that they themselves did not touch plaintiff, but they conveniently omit the fact that they deliberately set in motion the wheels that led to plaintiff being assaulted and battered.

Negligent Hiring, Retention, Training, and Supervision

As was the case in regard to plaintiff's *Monell* claim, information in support of these claims is currently almost exclusively within defendants' control.  At paragraphs 44 and 45, plaintiff provides the only information now available to her, in regard to defendant Discala.  Given the asymmetry of available information, plaintiff cannot be expected to provide greater detail at this time, without having had the benefit of discovery.

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Court deny all aspects of defendants' motions to dismiss.

Dated:        New York, New York
              November 25, 2015

                              ROSE M. WEBER
                              Attorney for Plaintiff
                              30 Vesey Street, Suite 1801
                              New York, NY 10007
                              (212) 748-3355


                              By:  _____/s_____
                                    ROSE M. WEBER (RW 0515)

34