USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

DARE MATTHEWS,                                              :
                                                           :
                              Plaintiff,                   :
                                                           :
              -against-                                    :
                                                           :
CITY OF NEW YORK, POLICE OFFICER                           :
CARMEN MATUCCIO, POLICE OFFICERS JOHN                      :
DOE #1-3, THE NEW YORK CITY HEALTH AND                     :        15-CV-2311 (ALC)
HOSPITALS CORPORATION, DR. KATHERINE                       :
MALOY, DR. ANGELA LEE, DR. ABIGAIL                         :        **OPINION**
DAHAN, DR. SERENA YUAN VOLPP, E.M.T.                       :        **& ORDER**
CALIN DAVID, E.M.T. MICHAEL DISCALA, SL                    :
GREEN REALTY CORP., SLG 315 WEST LLC,                      :
STONEHENGE MANAGEMENT LLC, GUS                             :
BALIDEMIC, and MANNY LOPEZ,                                :
                                                           :
                              Defendants.                  :

------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Dare Matthews brings this action against the City of New York, Officer Carmen

Martuccio, Emergency Medical Technician Calin David, Emergency Medical Technician

Michael DiScala (collectively "City Defendants"), the New York City Health and Hospitals

Corporation, Dr. Katherine Maloy, Dr. Angela Lee, Dr. Abigail Dahan, Dr. Serena Yuan Volpp

(collectively "HHC Defendants"), SL Green Realty Corporation, SLG 315 West LLC,

Stonehenge Management LLC, Gus Balidemic, and Manny Lopez (collectively "Private

Defendants").  She alleges violations of her rights under 42 U.S.C. § 1983 and state law.

Defendants filed motions to dismiss Plaintiff's Second Amended Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motions

are granted in part and denied in part.

1

## BACKGROUND

The following facts and allegations are drawn from the Plaintiff's Amended Complaint ("Am. Compl.") and are presented as true for the purposes of this motion.

On April 30, 2014, Plaintiff accidentally locked herself out of her apartment. (Am. Comp. ¶ 26.) Plaintiff waited patiently in the lobby of her apartment complex and interacted calmly and pleasantly with Defendants Gus Balidemic and Manny Lopez. (*Id.* ¶ 26.) Plaintiff acted in a manner that would not suggest Plaintiff was in need of medical or psychiatric drugs, was on drugs, was mentally ill, or posed a danger to herself or others. (*Id.* ¶ 28.) Nonetheless, Defendants Balidemic and Lopez called 911 and reported that Plaintiff was out of control, hallucinating, and possibly on drugs. (*Id.* ¶ 29.) Balidemic and Lopez did this maliciously and possibly because they felt that Plaintiff had previously been unfriendly towards them. (*Id.* ¶¶ 27, 29.)

Balidemic and Lopez knew that the information that they conveyed on this 911 call was false. (*Id.* ¶ 30.) They then reiterated these malicious and false accusations to the defendants P.O. Carmen Martuccio, E.M.T. Calin David, E.M.T. Michael DiScala, and three unidentified police officers. (*Id.* ¶ 31.) These City Defendants observed and conversed with Plaintiff upon arrival and had ample opportunity to evaluate her independently. (*Id.* ¶ 34.) Martuccio, David, DiScala, and the other officers did not conduct any of the procedures necessary for interacting with an "emotionally disturbed person" or with a person believed to have been on drugs. (*Id.* ¶¶ 35-38.) Plaintiff did not behave in a manner that would suggest to a reasonable police officer that she was in need of medical or psychiatric care, was on drugs, was mentally ill, or posed a danger to herself or others. (*Id.* ¶ 39.) Regardless, Plaintiff was placed in custody and transported involuntarily to Bellevue Hospital by Martuccio, David, DiScala, and the remaining

2

officers. (*Id.* ¶ 41.)  E.M.T.s David and DiScala falsely reported in their paperwork that Plaintiff suffered from a behavioral disorder. (*Id.* ¶ 42.)  They also falsely noted that Plaintiff had refused to speak with them despite listing Plaintiff's medications and having no basis for knowing them without having spoken with her. (*Id.* ¶ 43.)

Plaintiff was involuntarily confined and medicated at Bellevue Hospital Center by Dr. Katherine Maloy, Dr. Angela Lee, Dr. Abigail Dahan, and Dr. Serena Yuan Volpp. (*Id.* ¶¶ 46-47.)  While in the presence of these doctors, Plaintiff did not behave in any manner that would suggest to a reasonable doctor that she was in need of psychiatric care, was mentally ill, or posed a danger to herself or others. (*Id.* ¶ 49.)  New York City Health and Hospital Corporation had incurred an operating loss of $708.3 million in the 2013-14 fiscal year and the HHC president had reported to the New York City Council that HHC's operating deficit was projected to grow to $1.4 billion within four years. (*Id.* ¶¶ 52-53.)  Therefore, the decision to confine and medicate Plaintiff was partially caused by pressure on the doctors to fill beds at Bellevue in order to bolster HHC's financial position and protect the doctors' positions. (*Id.* ¶ 51.)

Consistent with this goal, Dr. Maloy, Dr. Lee, Dr. Dahan, and Dr. Volpp falsified documents and/or gave false testimony in order to hospitalize Plaintiff, medicate her, and prolong her forced hospitalization. (*Id.* ¶ 54.)  For example, Dr. Maloy indicated in Plaintiff's medical chart that Plaintiff met the standard for involuntary commitment and that Plaintiff "appear[ed] to have substances on board" despite the fact that Dr. Maloy had not seen, met, or spoken with the Plaintiff. (*Id.* ¶ 55.)  Dr. Maloy also noted in Plaintiff's chart that Plaintiff was "internally stimulated and smiling inappropriately" when Plaintiff was actually watching and responding to a television broadcasting the Jerry Springer show. (*Id.* ¶ 56.)

In another example of a falsified medical record, Dr. Lee wrote that Plaintiff had "prominent signs of intoxication" when Plaintiff was not exhibiting any signs of intoxication. (*Id.* ¶ 57.) Moreover, Dr. Lee failed to detail which signs she had allegedly observed. (*Id.*) Dr. Dahan similarly noted incorrect information when she wrote that Plaintiff's mother "is very concerned that [Plaintiff's] abrupt change in behavior could be due to ingestion/intox/being drugged" when Plaintiff's mother had actually remarked that she was concerned that Bellevue had drugged Plaintiff. (*Id.* ¶ 58.)

On multiple occasions, Dr. Volpp deliberately distorted facts to support a diagnosis of mental illness. (*Id.* ¶ 63.) In Dr. Volpp's presence, Plaintiff received frequent updates on her phone about the scandal involving the owner of the Los Angeles Clippers, Donald Sterling, and Plaintiff remarked that her Twitter account had been compromised. (*Id.* ¶¶ 61, 62.) Dr. Volpp relied on these observations when writing in Plaintiff's medical chart that Plaintiff suffered from "ideas of ideation or influence" and "paranoid ideation." (*Id.* ¶¶ 59, 63.) Dr. Volpp also concluded that Plaintiff was obsessed with the Clippers and concluded that Plaintiff believed that her phone was controlling her thoughts. (*Id.* ¶¶ 60, 63.) However, these conclusions were incorrect. At the time, Plaintiff's Twitter account had been hacked and Dr. Volpp could have easily verified this on Plaintiff's phone. (*Id.* ¶ 61.) Moreover, Plaintiff was a devoted fan of the Clippers and was simply following the development of a national story. (*Id.* ¶ 62.) A hearing was held to determine whether Plaintiff would remain involuntarily committed. (*Id.* ¶ 64.) Under oath, Dr. Volpp falsely testified: "[Plaintiff] was preoccupied with the L.A. Clippers coach [sic] and racist statements that he had made, and felt that this was somehow connected to her changes that she noticed in her telephone, and thought this was related to her phone having been hacked." (*Id.*)

4

In essence, these doctors had varying levels of participation in the issuance of medical certifications and other legal process to hospitalize and medicate Plaintiff against her will. (*Id.* ¶ 65.) These falsehoods were the direct cause of Plaintiff's continued confinement at Bellevue Hospital for six days. (*Id.* ¶¶ 66, 68.) During her confinement at Bellevue, Plaintiff was punched in her face by an unidentified male employee of HHC (*Id.* ¶ 67), and has suffered emotional distress, embarrassment, and humiliation as a result of her treatment (*Id.* ¶ 69).

On July 7, 2014, Plaintiff filed Notice of Claims against the City of New York, New York City Fire Department Emergency Medical Services Division, New York City Fire Department, New York City Health and Hospitals Corporation, and Bellevue Hospital Center. (ECF Nos. 50-3, 60.) These Notice of Claims alleged the following actions and damages: negligence, medical malpractice, personal injuries, pain and suffering, reimbursement of medical and hospital expenses, and other attendant losses, assault, battery, sexual assault, false/unlawful arrest, conspiracy, fraud, illegal detainment/false imprisonment, intentional interference with property, and violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, as well as state and federal constitutional rights. On March 27, 2015, Plaintiff instituted the instant action.

## DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purposes

of a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

**False Arrest and False Imprisonment Claims under § 1983**

"Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, the people are 'to be secure in their persons . . . against unreasonable searches and seizures . . . .'" *Maryland v. Pringle*, 540 U.S. 366, 369 (2003) (quoting U.S. Const. amend. IV.). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation removed). "The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

"To state a claim of false arrest or imprisonment, a plaintiff must allege that "(1) the defendant intended to confine him [or her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Sinagra v. City of New York*, 7 N.Y.S.3d 286, 288 (N.Y. App. Div. 2015) (citing

*Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).  Confinement can be privileged when a person is seized and detained for a psychiatric evaluation.  Under Section 9.41 of the New York Mental Hygiene Law, a police officer "may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."  N.Y. Mental Hyg. Law § 9.41.  Likewise, a hospital may receive and retain a person alleged to have a mental illness for immediate observation, care and treatment if the person's conduct is likely to result harm to his or her self or others.  N.Y. Mental Hyg. Law § 9.39.  Liability under the Fourth Amendment does not attach if there is probable cause to believe that the seized individual was a danger to himself or others.  *See Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003).

"Under New York law, '[o]ne who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest.'"  *Croft v. Greenhope Servs. for Women, Inc.*, No. 13-CV-2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013) (alterations in original) (quoting *Dunn v. City of Syracuse*, 443 N.Y.S.2d 463, 464 (1981)). While the plaintiff must prove that the defendant *intended* or *instigated* his confinement, a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution.  *Kraft v. City of New York*, 696 F. Supp. 2d 403, 421-22 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011) (quotation marks and citations omitted) (emphasis in original). "Generally a civilian defendant who furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for false arrest or false imprisonment."  *Barua*

*v. Barua*, No. 14-CV-5107 MKB, 2015 WL 4925028, at \*4 (E.D.N.Y. Aug. 18, 2015) (citations and quotation marks omitted); *see also Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005) (collecting cases).

Plaintiff has sufficiently alleged that there were no facts for the City Defendants to establish probable cause for her arrest and hospitalization. The officers and EMTs responded to a report that Plaintiff was "out of control, hallucinating, and possibly on drugs." Plaintiff alleges that her behavior did not suggest she was in need of medical or psychiatric care, under the influence of drugs, or mentally ill. Instead, Plaintiff alleges that she was "waiting patiently in the lobby and interacting calmly and pleasantly" with Balidemic and Lopez. She also alleges that the City Defendants had ample opportunity to observe Plaintiff for themselves and determine whether her behavior matched the behavior recounted in the 911 call. Given that Plaintiff also alleges that she was calm upon the arrival of the authorities, it is apparent that the alleged facts fail to support a finding of probable cause that Plaintiff was likely to harm herself or others.

The same holds true for Plaintiff's behavior in the hospital. Plaintiff alleges that these reports were falsified, or at the very least, dramatically incorrect assessments of what occurred. When accepting Plaintiff's allegations as true and drawing all inferences in favor of the plaintiff, the Court finds that the § 1983 false arrest claims against the City Defendants and HHC Defendants survive the motion to dismiss.

In contrast, Plaintiff has failed as a matter of law to allege a claim of false arrest against the SLG Defendants. Plaintiff alleges that Balidemic and Lopez maliciously reported to the 911 operator that Plaintiff was "out of control, hallucinating, and possibly on drugs." Even if they did intend to provide false information to the police, this type of accusation is followed by an independent evaluation by the responding authorities and, thus, undermines a false arrest claim

against a private citizen. For example, in *Lozada v. Weilminster*, a district court noted the

following:

> Even assuming Plaintiff was calm and was not yelling or gesticulating, and Fire
> District Defendants still told State Defendants that Plaintiff was behaving
> irrationally, yelling and cursing, the inaccurate information provided to the State
> Troopers cannot be said to have "instigated" Plaintiff's arrest. . . . *Trooper Nolan*
> *had the opportunity to observe Plaintiff and make his own determination as to*
> *whether her behavior warranted arrest.*

92 F. Supp. 3d 76, 91 (E.D.N.Y. 2015) (emphasis added). Plaintiff relies on a number of cases

where allegations of intentionally false information has established a false arrest claim against a

private defendant. However, these cases are inapposite because only one of them, *Camac v.*

*Long Beach City School District*, includes a plaintiff detained for posing a danger to himself or

others.[1] There, the police involuntarily hospitalized the plaintiff after receiving a report that the

plaintiff had threatened to commit suicide. *Camac v. Long Beach City Sch. Dist.*, No. 09 CV

5309 DRH ARL, 2011 WL 3030345, at *3 (E.D.N.Y. July 22, 2011). The plaintiff denied

making that threat and subsequently brought a false arrest action against the school official who

made the 911 call. *Id.* The court ultimately denied defendants' motion to dismiss the false arrest

claim. *Id.* at *8-9. That case differs because a report of a suicide threat does more to establish

probable cause than a report of erratic behavior. Suicide threats naturally call for more reliance

on the informant and less independent evaluation than a report of strange behavior. *Compare*

*Bayne v. Provost*, No. 1:04 CV 44, 2005 WL 1871182, at *8 (N.D.N.Y. Aug. 4, 2005) *with*

*Kerman v. City of New York*, 261 F.3d 229, 238 (2d Cir. 2001). Plaintiff's allegations suggest

that the City Defendants independently evaluated Plaintiff, or at least had an opportunity to do

---

[1] The remaining cases cited by Plaintiff involve accusations by private defendants that would not require an
immediate determination by the police prior to arrest. The reported offenses in the cited cases include: fraud,
robbery, larceny, endangering the welfare of a child, trespassing, and assault.

9

so. As noted in *Lozada* above, this is enough to defeat claims for liability against those who contacted law enforcement.

Accordingly, the false arrest claim against the Private Defendants is dismissed.

**Due Process Claims**

It is well-established that "[a]n involuntary civil commitment is a 'massive curtailment of liberty,' and it therefore cannot permissibly be accomplished without due process of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). City Defendants and HHC Defendants seek to dismiss the procedural due process and substantive due process claims brought against them.

*Substantive Due Process Claim*

The substantive component of the Due Process Clause of the Fourteenth Amendment prohibits certain state actions "regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted). The Second Circuit has established a standard for deciding whether an involuntary hospitalization is a violation of substantive due process. Specifically, "a physician's decision to involuntarily commit a mentally ill person because he poses a danger to himself or others shocks the conscience . . . when the decision is based on 'substantive and procedural criteria that are . . . substantially below the standards generally accepted in the medical community.'" *Bolmer v. Oliveira*, 594 F.3d 134, 143 (2d Cir. 2010) (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1063 (2d Cir. 1995)). At the same time, involuntary commitments have been found to be governed by the Fourth Amendment protection against unreasonable seizures. *See Kerman*, 261 F.3d at 234-38 (applying Fourth Amendment principles to police entry and detention under the New York Mental Hygiene Law); *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (in § 1983 suit

brought against hospital, noting that the Fourth Amendment applies to involuntary commitment). This is significant because it is well established that where a constitutional protection has an Amendment as its explicit source, "that Amendment, not the generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (finding that post-arrest denial of desk appearance ticket cannot support a claim of denial of substantive due process because the Fourth Amendment provides the proper analytical framework).

As such, there is some conflict within this Circuit as to whether substantive due process claims can coexist with Fourth Amendment claims in the context of involuntary hospitalizations. *Compare Meyers v. Health & Hosps. Corp.*, No. 14CV7448CBALB, 2016 WL 2946172, at *10 (E.D.N.Y. May 18, 2016) (examining substantive due process claim against hospital for plaintiff involuntarily committed without discussing Fourth Amendment overlap) *and Mittelman v. Cnty. of Rockland*, No. 07-CV-6382 CM LMS, 2013 WL 1248623, at *24 (S.D.N.Y. Mar. 26, 2013) ("A § 1983 action based upon the plaintiff's involuntary civil commitment for a psychiatric evaluation raises two potential constitutional issues: the right to due process under the Fourteenth Amendment and a person's Fourth Amendment right against unreasonable search and seizure.") *with Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 625 (S.D.N.Y. 2015) (dismissing substantive due process claim against hospital staff as duplicative of Fourth Amendment claim and only reaching merits on alternative grounds) *and Greenaway v. Cnty. of Nassau*, 97 F. Supp. 3d 225, 237 (E.D.N.Y. 2015) (in case brought against police officers, noting "[a] plaintiff cannot succeed on a substantive due process claim where the state action in question is a Fourth Amendment seizure").. The City Defendants argue that the Fourteenth Amendment claims against them should be dismissed as duplicative of the Fourth Amendment claims.

The Court is persuaded by the City Defendants' argument as it applies to them. As recently as 2010, in *Bolmer v. Oliveira*, the Second Circuit held that the *Rodriguez* standard still governs whether an involuntary commitment violates substantive due process. There, the court was specifically examining whether the "shocks-the-conscience framework" in *Sacramento v. Lewis* replaced the question of whether a decision is based on "criteria that are substantially below the standards generally accepted by the medical community." *Bolmer*, 594 F.3d at 143. The Second Circuit did not examine whether the Fourth Amendment precludes a substantive due process claim in the context of involuntary commitment.[2] Nonetheless, the Second Circuit's analysis focusing on standards acceptable in a *medical* community suggests that a substantive due process claim should be limited to the hospital setting—thus preventing substantive due process claims against law enforcement officers who bring a person into a hospital.

For the City Defendants, Plaintiff asks this Court to apply the standard finding a substantive due process violation when alleged behavior "shocks the conscience." However, the ability to have a Fourth Amendment claim coexist is further undermined by the fact that this due process claim would be defeated by a showing of probable cause, the relevant standard for privileged confinement. *See, e.g., Heller*, 144 F. Supp. 3d. at 625 (dismissing substantive due process claim on alternative grounds because defendants' actions were privileged and reasonable). In light of the Supreme Court's prior admonition against creating substantive due process rights where other Amendments provide relief, the absence of an explicit standard designed for responding authorities, and the manner in which the garden-variety probable cause analysis under the Fourth Amendment can defeat a substantive due process claim, this Court grants the City Defendants' motion to dismiss as it pertains to the substantive due process claims.

---

[2] Notably, he Second Circuit declined to consider this question because the argument was only raised in a reply brief. *Id*. at 145.

Turning to the HHC Defendants, this Court notes, "a doctor will not be liable under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such judgment.'" *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)) (alteration in original). Due process does not "require a guarantee that a physician's assessment of the likelihood of serious harm be correct." *Rodriguez*, 72 F.3d at 1062. Here, Plaintiff's allegations, when construed as true, surpass instances of poor judgment or inaccurate assessments. Plaintiff alleges that the HHC defendants mischaracterized facts (Am. Compl. ¶ 58); deliberately falsified documents and gave false testimony (*Id.* ¶ 54); reached medical conclusions without seeing, meeting, or speaking with Plaintiff (*Id.* ¶ 55); and sought to commit Plaintiff for financial reasons that have no relation to Plaintiff's medical condition (*Id.* ¶¶ 51-53). Taken together, these allegations are sufficient to survive a motion to dismiss.[3]

**Procedural Due Process**

The Second Circuit has held that individuals taken to a hospital under New York Mental Hygiene Law § 9.41 are not entitled to a hearing beforehand. *Mawhirt v. Ahmed*, 8 F. App'x 125, 127 (2d Cir. 2001). Because New York Mental Hygiene Law § 9.41 does not provide any specific procedure or hearing prior to being transported to a hospital or psychiatric emergency

---

[3] Plaintiff also alleges that her behavior cannot "suggest to any reasonable doctor that she was in need of psychiatric care, was mentally ill, or posed a danger to herself or others." (*Id.* ¶ 49). In one instance, Defendant Dr. Serena Yuan Volpp reported that Plaintiff suffered from "ideas of reference or influence" and "paranoid ideation" because Plaintiff stated that her Twitter account had been hacked and because Dr. Volpp believed that Plaintiff was allegedly obsessed with the Los Angeles Clippers. Allegedly, Plaintiff's phone had been hacked, and while Plaintiff admits to being a "huge Clippers fan," these events unfolded during a high profile scandal involving the Clippers' owner. Plaintiff contends that Dr. Volpp deliberately combined and distorted facts to make it appear that Plaintiff was paranoid and that she believed that her phone was controlling her thoughts. Whether someone should be committed for psychiatric evaluation is a medical question to be determined by expert testimony. *Mittelman*, 2013 WL 1248623 at *24. Since this question "does not ordinarily involve matters within the layman's realm of knowledge," *Olivier*, 398 F.3d at 190 (quotation omitted), a motion to dismiss is an inappropriate vehicle for deciding this complicated question.

program, individuals cannot assert a procedural due process claim under this statute. *See* N.Y. Mental Hyg. Law § 9.41; *Amato v. Hartnett*, 936 F. Supp. 2d 416, 436 (S.D.N.Y. 2013) (citing *Mawhirt v. Ahmed*, 86 F. Supp. 2d 81, 88 (E.D.N.Y. 2000)). Therefore, the procedural due process claim against the City Defendants is dismissed.

When applied to hospital defendants, the Second Circuit has further held "that New York's overall statutory scheme outlining the process for involuntary commitment under the [Mental Hygiene Law] meets the requirements of procedural due process. Where each of the relevant provisions of the [Mental Hygiene Law] have been followed, there is no procedural due process violation." *Kraft*, 696 F. Supp. 2d at 417 (citations omitted).

Plaintiff argues that HHC Defendants violated her procedural due process rights by falsifying records and completing the relevant provisions of the Mental Hygiene Law dishonestly and with little regard for the truth. These specific acts—most of which were also discussed in relation to substantive due process—are sufficient to establish a claim that the hospital personnel violated Plaintiff's procedural due process rights.[4]

**Malicious Abuse of Process under § 1983**

The elements of a malicious abuse of process claim under § 1983 are derived from state law. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, an abuse of process claim has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner

---

[4] Although Courts often look to the pleadings to determine which procedures were followed or disregarded, allegations of falsified records call for a different type of analysis. In these situations, the question is no longer whether government officials nominally abided by the procedural provisions, but rather whether the procedural safeguards remained meaningful.

14

to obtain a collateral objective. *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 523

(S.D.N.Y.) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984)), *on reconsideration in part*,

133 F. Supp. 3d 563 (S.D.N.Y. 2015). The crux of a malicious abuse of process claim is the

collateral objective element. *Kraft*, 696 F. Supp. 2d at 416.

Plaintiff has adequately pled facts to establish the elements of this claim. According to

Plaintiff, the HHC Defendants confined and medicated her despite the fact that she was not in

need of psychiatric care. Significantly, this was allegedly done for inappropriate reasons.

Plaintiff alleges that the HHC doctors have been pressured to fill beds at Bellevue to "both

bolster HHC's shaky financial position and safeguard [the doctors'] positions there." This is

enough to survive a motion to dismiss.

### Failure to Intervene

The police officer defendants seek to dismiss Plaintiff's claim for failure to intervene.

They argue that Plaintiff has failed to allege the personal involvement of the officers and has

failed to allege facts to support the elements of the claim. A claim for failure to intervene is

grounded in the widely recognized rule that "all law enforcement officials have an affirmative

duty to intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

There is no dispute that Plaintiff must allege and eventually prove that the defendants were

aware of the underlying unlawful conduct, had a realistic opportunity to intervene to prevent the

harm, and failed to do so. *See Anderson*, 17 F.3d at 557. Defendant argues that Plaintiff's

allegations are too imprecise to determine the role of each officer. Conversely, Plaintiff contends

that dismissal would be inappropriate because, without discovery, she is unable to identify the

roles of the officers.

The Court agrees with Plaintiff. Plaintiff has adequately pled a constitutional violation and has pled that the officers were present in the building of the lobby during this alleged violation. In situations similar to this, courts have denied a motion to dismiss in order to allow greater clarification of the facts after discovery. *See, e.g., Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *6 (S.D.N.Y. Aug. 12, 2016) ("If the officer was a direct participant in the excessive force violation, the failure to intervene theory will be inapplicable. The determination of who was specifically involved in the beating will be left to discovery."); *c.f. Terebesi v. Torreso* ("Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless considering all the evidence a reasonable jury could not possibly conclude otherwise."), 764 F.3d 217, 244 (2d Cir. 2014), *cert. denied sub nom. Torresso v. Terebesi*, 135 S. Ct. 1842 (2015). Furthermore, "the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012). When Plaintiff properly alleges "at least one constitutional violation, [Plaintiff is] entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene." *Id.*

For the foregoing reasons, Plaintiff's failure to intervene claim cannot be dismissed in light of the early stage and the facts alleged.

**Qualified Immunity**

City Defendants also seek qualified immunity from suit for the false arrest. Qualified immunity "shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to

believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotation marks omitted).

"In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Betts v. Shearman,* No. 12 CIV. 3195 JPO, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), (footnote and citation omitted) *aff'd*, 751 F.3d 78 (2d Cir. 2014). Arguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (emphasis in original) (citation and quotation marks omitted)" "*Kerman v. City of New York* makes clear that, to determine whether a mental-health seizure is justified by arguably probable cause, a court must review the specific observations and information available to the officers at the time of the seizure." *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016).

When construing Plaintiff's allegations as true, it is evident that qualified immunity is inappropriate here. Plaintiff alleges that the City Defendants responded to the 911 call and observed Plaintiff acting in no way to suggest that "she was in need of medical or psychiatric care, was on drugs, was mentally ill, or posed a danger to herself or others." (Am. Compl. ¶ 39.) Plaintiff alleges that the EMTs and officers took her into custody against her will and that the EMTs "falsified paperwork." Though vague, these facts are sufficient to defeat qualified immunity. In this matter, additional facts—which discovery should reveal—are required to elucidate what the police officers observed. *See generally Myers*, 819 F.3d at 633 (finding that district court erred in granting qualified immunity on a summary judgment where the record

contained insufficient evidence to support the conclusion that the officer reasonably believed that plaintiff was dangerous to herself or others).

**Monell Claims against City of New York and New York City Health and Hospital Corporation**

Plaintiff seeks to establish municipal liability against the City of New York and the New York City Health and Hospital Corporation.  These defendants argue that Plaintiff has failed to establish a factual basis for imposing liability.  As set forth below, the Court concludes that Plaintiff fails to substantiate her allegations with sufficient facts about her or others' experiences to suggest § 1983 liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).

Under *Monell*, a § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was caused by an official policy or custom.  *Id*. at 690-91. Before establishing a causal connection between the policy or custom and the alleged deprivation of his constitutional rights, a plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]."  *Johnson v. City of New York*, No. 06 Civ. 9426(GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

At the pleading stage, plaintiff need not prove these elements, but must plead them sufficiently to make out a plausible claim for relief.  *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015).  Boilerplate statements will not suffice.  To survive a motion to dismiss, plaintiffs "cannot merely allege the existence of a municipal policy or custom, 'but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'"  *Id*. (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576

18

(S.D.N.Y. 2012). Simply put, conclusory allegations of a municipal custom or practice of tolerating official misconduct, without factual details, cannot establish the existence of such a custom. *Id.*

In order to satisfy the "policy or custom" prong, a plaintiff must allege "(1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted). The policy or custom need not be memorialized in a specific rule or regulation. *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citation omitted).

Plaintiff's Amended Complaint alleges that the municipal defendants have engaged in a consistent practice of "wrongfully arresting and hospitalizing individuals who do not require in-patient mental health treatment, and falsifying documents to justify forced psychiatric hospitalizations." (Am. Compl. ¶ 101.) As such, the Court reads this complaint as seeking relief under the third category of *Monell* liability: a widespread practice.

Under the third prong, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Therefore, a plaintiff may establish municipal liability by demonstrating that a [policymaker] 'indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding

practice or custom which may fairly be said to represent official policy.'" *Kucharczyk*, 95 F. Supp. 3d at 539.

Although Plaintiff includes the general allegation that there is a widespread practice of wrongfully hospitalizing individuals and falsifying documents, the facts pled are insufficient to meet this prong's requirement. Plaintiff alleges that this custom may be inferred from repeated occurrences of similar wrongful conduct document by the facts of several civil right actions filed against the municipal defendants. Upon examining these actions, the Court agrees with the municipal defendants. The cases included in the Amended Complaint are too scattered and dissimilar in their facts, and all but one of them failed to end in a judgment establishing liability.

Typically, a list of cases may only support an allegation of widespread practice when they are combined with anecdotal evidence and other factual allegations of the alleged policy or custom. *See, e.g., Walker v. City of New York*, No. 14-CV-808 ER, 2015 WL 4254026, at *8-9 (S.D.N.Y. July 14, 2015); *Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *2 (S.D.N.Y. Mar. 26, 2015), *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009); *c.f. Walker v. City of New York*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (holding, where plaintiff alleged that ten similar complaints had been filed in previous ten years, that "[t]he paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim").

Plaintiff argues that her list of cases is sufficient at this stage of litigation because a plaintiff cannot be expected to plead her *Monell* claim with greater particularity prior to discovery. However, this argument is best applied to municipal liability claims alleging a failure

to train. *See, e.g., Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 45 (E.D.N.Y. 2011) ("It is

unlikely that a plaintiff would have information about the city's training programs or about the

cause of the misconduct at the pleading stage." (quoting *Amnesty America v. Town of West*

*Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004))); *see also Walker*, 2014 WL 1259618, at *3

(distinguishing failure-to-train cases from cases alleging a widespread custom).   Regarding

allegations of a widespread practice, third-party evidence has also been critical to buttressing a

list of cases. *See, e.g., White v. City of New York*, No. 13 CIV. 7421 KPF, 2015 WL 4601121, at

*6 (S.D.N.Y. July 31, 2015) (relying on a Department of Justice report in denial of motion to

dismiss *Monell* claim and collecting cases where DOJ findings have helped plaintiffs allege a

widespread policy or practice); *Brown v. City of New York*, NO. 08-CV-5095, 2013 WL 133875,

at *7 (denying motion to dismiss *Monell* claim after relying on list of settled cases and a

statement by a police spokesperson in support of the alleged practices).   In the case at bar,

Plaintiff points to no anecdotal statement or third-party resource to further support her allegation

of a widespread custom.   Thus, even when combined with the lawsuits that Plaintiff cites, her

allegations are insufficient to plausibly support an inference of a custom or policy.

 Accordingly Plaintiff's municipal claims against Defendants City of New York and New

York City Health and Hospital Corporation are dismissed.

### State Law Claims

#### *Notice of Claim Requirements*

 City Defendants and HHC Defendants challenge most of Plaintiff's state law claims on

the grounds that these claims were insufficiently plead in Plaintiff's Notice of Claim.   "Under

New York law, a notice of claim is a condition precedent to bringing certain tort actions against a

municipality such as the City for damages sustained by reason of the negligence or wrongful act

of the municipality or its officers, agents, or employees. *Ferlito v. Cnty. Of Suffolk*, No. 06-5708

(DRH)(AKT), 2007 WL 4180670, at *3 (E.D.N.Y. Nov. 19, 2007) (citing *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *see also* N.Y. Gen. Mun. Law § 50-i. Generally, "in a federal court, state notice-of-claim statutes apply to state-law claims." *Hazan v. City of New York*, No. 98–CV–1716, 1999 WL 493352, at *6 (S.D.N.Y. July 12, 1999). A notice of claim must include "the time when, the place where and the manner in which the claim arose." N.Y. Gen. Mun. Law § 50-e. But, the notice of claim "need not provide that information with 'literal nicety or exactness'; rather the test is whether the Notice provides facts sufficient to enable the [municipality] to investigate" the claim.[5] *Fisher v. Cnty. of Nassau*, No. 10-CV-0677 JS ETB, 2011 WL 4899920, at *3 (E.D.N.Y. Oct. 13, 2011) (quoting *Phillipps v. New York City Transit Auth.*, 890 N.Y.S.2d 510, 512 (2009)).

Plaintiff's Notice of Claims against the City Defendants and HHC Defendants greatly resemble one another. In both notices, Plaintiff fails to assert the following claims: malicious abuse of process, negligent hiring and retention, and negligent training and supervision. In situations where a notice of claim fails to allege a cause of action explicitly, the claim may survive if the clearly stated facts or alleged theories of liability imply or relate to claims brought in subsequent pleadings. *See, e.g., Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 566, 571 (S.D.N.Y. 2012); *see also DeLeonibus v. Scognamillo*, 583 N.Y.S.2d 285 (1992) ("The

---

[5] The individual defendants seek dismissal of the state law claims because Plaintiff failed to name any of them in her Notice of Claims. It had commonly been the practice among courts to dismiss actions against individual municipal employees where the individuals were not named in the notice of claim. *See Jackson v. City of New York*, 29 F. Supp. 3d 161, 180-81 (E.D.N.Y. 2014); *T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 CV 5133 VB, 2012 WL 5992748, at *8 (S.D.N.Y. Nov. 27, 2012); *DC v. Valley Cent. Sch. Dist.*, 2011 WL 3480389, at *1 (S.D.N.Y. June 29, 2011); *Schafer v. Hicksville Union Free Sch. Dist.*, No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *11 (E.D.N.Y. Mar. 31, 2011). However, New York State Supreme Court Appellate Divisions have split on this issue, *compare Goodwin v. Pretorius*, 962 N.Y.S.2d 539 (4th Dep't 2013) *with* Tannenbaum v. City of New York, 819 N.Y.S.2d 4 (1st Dep't 2006), causing district courts to reevaluate this principle, *see, e.g., Kennedy v. City of Albany*, No. 1:15-CV-00491 MAD, 2015 WL 6394513, at *4 (N.D.N.Y. Oct. 22, 2015); *Bah v. City of New York*, No. 13 CIV. 6690 PKC KNF, 2014 WL 1760063, at *12 (S.D.N.Y. May 1, 2014); *Reyes v. City of New York*, 992 F. Supp. 2d 290, 301 (S.D.N.Y. 2014). This court agrees with the more recent district court decisions on this matter and finds that failure to name individual defendants in a notice of claim is not an independently sufficient ground for dismissal.

courts have not interpreted [Section 50-e(2)] to require that a claimant state a precise cause of action *in haec verba* in a notice of claim.").

Plaintiff's state law claim for abuse of process must be dismissed because Plaintiff fails to state the nature of an abuse of process claim and fails to describe how such a claim arose. Specifically, in the Notices of Claim, Plaintiff fails to include any facts or details that would refer to or imply the third element of an abuse of process claim: a collateral objective outside the legitimate ends of the process. Similarly, Plaintiff's claims for negligent hiring and retention and negligent training and supervision should be dismissed. Plaintiff's notices of claim focus on the events of April 30, 2014 and they do not include facts that would alert the Defendants to claims regarding the hiring, training, retention, or supervision of its employees. These issues are sufficient to require a dismissal for failure to state a cause of action. *See e.g.*, *Hargroves v. City of New York*, No. 03-CV-1668 RRM VMS, 2014 WL 1271024, at *6 (E.D.N.Y. Mar. 26, 2014) ("The facts stated in the [plaintiffs'] notices relate only to their date of arrest, but any facts arising out of the City's negligent hiring, training or supervision 'would , of necessity, have occurred prior to that date." (citation omitted)); *Fisher*, 2011 WL 4899920, at *3 ("Nowhere in his Notice of Claim does Plaintiff suggest that he planned to pursue negligent hiring and negligent supervision. This oversight is fatal to these causes of action."); *Jewell v. City of New York*, No. 94 CIV. 5454(DLC), 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995) (finding deficient notice of claim where it generally alleged negligence but failed to include "facts suggesting that this referred to the City's hiring practices rather than to the tortious acts of the traffic agent and police officer").

*Remaining State Law Claims*

Plaintiff has also alleged negligent hiring and negligent supervision claims against the Private Defendants. In order to plead these claims, plaintiff must show "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." *Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (citations and quotation marks omitted). "A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." *Id.* (citations and quotation marks omitted); *see also Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) ("Claims for negligent hiring and retention arise from an employer 'having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee.'" (citation omitted)).

Plaintiff has alleged this claim against the Private Defendants in a conclusory fashion and has failed to plausibly allege facts indicating that SLG, Stonehenge, and SL Green knew or should have known of the propensity of Balidemic and Lopez to retaliate against tenants, or that there were deficiencies in employee training and supervision that caused harm. The Court dismisses this claim without prejudice. If Plaintiff can plausibly allege these facts, then amendment of this claim will not be futile.[6]

---

[6] Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over all other claims that are so related to claims in the action forming part of the same case or controversy. The Court exercises this supplemental jurisdiction for the surviving state law claims brought against the Private Defendants. *See Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994) ("[T]he exercise of supplemental jurisdiction is left to the discretion of the district court. . . .").

Plaintiff has properly alleged the remaining state law claims.  Accordingly, Defendants' motions to dismiss are denied as they pertain to these claims.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.  In particular, the following claims are dismissed with prejudice: the false arrest claim against the Private Defendants; the procedural and substantive due process claims against the City Defendants; the negligent hiring and negligent supervision claims against the City Defendants and HHC defendants, and the state malicious abuse of process claim against the HHC Defendants.  Plaintiff's *Monell* claims and negligent hiring and negligent supervision claims against the Private Defendants are dismissed without prejudice, with leave to given to replead within thirty days.  The motion is denied as to all other claims.  The Clerk of Court is respectfully directed to close the Defendant's motions (ECF Nos. 49, 53, 58).

**SO ORDERED.**


**Dated:**      **New York, New York**
              **September 30, 2016**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**